(No. 31618.—

The People *ex rel.* Melvin E. Bailey, County Collector, Appellee, *vs.* Illinois Central Railroad Company, Appellant.

*Opinion filed November 27, 1950.*

JOHN W. FREELS, and R. C. BECKETT, both of Chicago, and CHARLES C. LEFORGEE, THOMAS W. SAMUELS, E. WAYNE SCHROEDER, and RICHARD J. WELSH, all of Decatur, for appellant.

PERLEY T. LUPTON, State's Attorney, ROBERT N. PATTERSON, VAIL, MILLS & ARMSTRONG, and MONROE, ALLEN & McGAUGHEY, all of Decatur, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

The defendant, the Illinois Central Railroad Company, having previously paid its taxes in full, under protest, filed objections in the county court of Macon County to an application of the county collector for a judgment against, and an order for the sale of, real estate for the nonpayment of taxes for the year 1948 levied by seven townships for road and bridge purposes and by Macon County Non-High School District No. 200 for educational purposes. From the judgment overruling these objections, defendant appeals.

The same factual situation obtains with respect to the objections against the taxes for road and bridge purposes levied by Decatur, Hickory Point, Illini, Mt. Zion, South Wheatland and Whitmore townships. There is a minor but, in our opinion, immaterial variation in the facts relating to the levy of Friends Creek Township. The facts need be narrated only with respect to Decatur Township. The board of town auditors of the township gave its consent in writing to the extension by the commissioner of highways of an additional tax rate of eight cents for the year 1945 for road and bridge purposes, thereby making a maximum rate for the year 1945 of thirty-three cents per $100 of assessed valuation of the taxable property in the township. For the year 1948, its highway commissioner levied $150,000 for road and bridge purposes and certified

to the county board of supervisors a rate of .125 on each $100 of assessed valuation.. The county clerk computed and extended the 1948 tax rate of .084 under section 162a of the Revenue Act, based upon a rate of 33 cents, the maximum permissible rate for road and bridge purposes prior to January 1, 1946, where the highway commissioner had obtained the consent of the board of town auditors to the levy of a rate in excess of 25 cents, the maximum permissible rate without this consent.

By its objection, defendant charged that, since no consent was obtained to the extension of an additional rate for the year 1948, the computation should have been made upon the maximum rate of .125 cents (formerly 25 cents) per $100 assessed valuation extendible prior to January 1, 1946, without the consent of the board of town auditors rather than the rate of .165, (formerly 33 cents,) and that, accordingly, the rate of .084 extended for road and bridge purposes was illegal to the extent of .021.

The challenged taxes were levied under section 56 of "An Act to revise the law in relation to roads and bridges," (Ill. Rev. Stat. 1947, chap. 121, par. 62,) which, so far as relevant, provides that, on the first Tuesday in September, the highway commissioner in each township district shall annually determine and certify to the county board the amount necessary to be raised by taxation for the proper construction, maintenance and repair of roads and bridges in such township district. The amount certified by the county board, it is provided, shall be extended by the county clerk as taxes against the taxable property of the district; provided, that the county clerk shall not extend against the taxable property of any township district a rate in excess of .165 per cent of the full, fair cash value, as equalized or assessed by the Department of Revenue; nor against the taxable property of any town a rate in excess of .125 per cent of the full, fair cash value, as equalized or assessed by the Department of Revenue, unless before

the first Tuesday in September, the highway commissioner of the town has secured the written consent of a majority of the members of the board of town auditors to the extension of a greater rate, and in such case the rate shall not exceed that approved by a majority of the members of the board, and in no case shall it exceed .165 per cent of the full, fair cash value, as equalized or assessed by the Department of Revenue, except as is otherwise provided in four sections not involved here. Section 56 concludes, "Provided, further, that the foregoing limitations upon tax rates are subject to the provisions of Section 162a of the 'Revenue Act of 1939,' filed May 17, 1939, as amended."

Section 162a, as amended, (Ill. Rev. Stat. 1947, chap. 120, par. 643a,) to the extent it applies to the formula determining the tax rate for road and bridge purposes for the year 1948, provides that, after the effective date of the amendatory act of 1947 and until December 31, 1952, with certain exceptions not material here, "no tax for any fund of any taxing district shall be extended at a rate requiring a greater percentage than, and no tax rate necessary to produce the amount of a levy for any fund of any taxing district shall be restricted to a lesser percentage than, 105% of whichever is lower of the following: * * * (b) the rate produced by dividing the maximum permissible 1945 tax extension for that fund of the taxing district by the 1946 full 100% fair cash value of the taxable property in the taxing district; provided that the maximum permissible 1945 tax extension shall be computed by use of the maximum tax rate in effect or authorized prior to January 1, 1946, whether established by referendum or statute, applied to the 1945 assessment."

Application of the formula described resulted in the tax rates extended by the seven townships for taxes for roads and bridges. One of the components of the formula prescribed by section 162a is the "maximum permissible 1945 tax extension" which, it is provided, shall be computed by

use of the maximum tax rate in effect or authorized prior to January 1, 1946. The manifest legislative intent is that it is not the actual 1945 tax extension in every instance which is to be used as a factor in the formula but, instead, that the maximum permissible tax extension is to be used. Although the language of the statute is clear, defendant repeatedly refers to the *maximum* 1945 tax extension rather than to the *maximum permissible* 1945 extension and, also, ignores the portion of section 162a requiring the use of the maximum tax rate "in effect or authorized prior to January 1, 1946, whether established by referendum or statute." The *maximum permissible* tax extension for 1945 would be based upon a tax rate of 33 cents, the maximum permissible tax rate in effect, and which was established by statute. If any one of the seven townships had, by referendum, established a greater permissible tax rate, the rate so established or permitted by referendum would be used under the formula fixed in section 162a. No one of the townships, however, had permitted by referendum the extension of a greater rate than 33 cents in 1945.

By use of the maximum permissible tax rate of 33 cents, the extension for road and bridge purposes in 1945 was $137,493.57. By applying the formula described in section 162a, the maximum tax rate for Decatur Township for the year 1948 is .084, being determined as follows: 105 times the maximum extension at the rate of 33 cents in 1945, namely, $137,493.57, divided by the 1946 full 100 per cent fair cash value, $173,529,349. Defendant asserts that the tax rate, .084, rests upon an assumption by the county clerk that a consent obtained from the board of town auditors in 1945 remains in effect in computing the maximum tax rate extendible in each year during the five-year transition period established by section 162a. If defendant's contention is carried to its logical extreme, the county clerk would be required to change the formula each year, depending upon whether the commissioner of high-

ways obtained the consent of the board of town auditors to the extension of a greater rate than .125 in any particular year. The formula prescribed in section 162a, however, is a fixed, definite formula and, during the five-year period expiring December 31, 1952, is not to be changed or altered by the county clerk upon the happening or non-happening of an act or the performance or omission of an act by the commissioner of highways. Irrespective of whether the highway commissioner obtains the consent of the board of town auditors in any particular year to the extension of a greater rate for road and bridge purposes than .125, the legislative intent reflected in section 162a remains the same, namely, that the "maximum permissible 1945 tax extension," prescribed by section 162a of the Revenue Act, is to be used and not some other tax extension.

When section 162a of the Revenue Act, as amended in 1947, became effective, the commissioner of highways in each of the townships whose tax levies are involved here knew that tax levies for roads and bridges to December 31, 1952, could not exceed the levy permitted according to the computations under section 162a. In making their levies for the year 1947, and, again, for 1948, each commissioner knew that the maximum tax levies were to be determined by the formula prescribed and that one of the elements of this formula was the "maximum permissible 1945 tax extension," and that, since this element was definitely fixed, it could not be altered by any act of the commissioner. It follows that, irrespective of any act on his part or by the town auditors, this element of the formula would remain the same and, under no circumstances, could the clerk extend taxes at a rate substantially less than .125. Stated differently, so long as the commissioner levied taxes at a rate greater than permitted by the formula, the maximum amount the clerk could extend was the amount fixed by the formula which could not have equalled or exceeded the rate of .125. As applied to Decatur Township, the com-

missioner knew the taxes for road and bridge purposes could not exceed .084, as determined by the formula under section 162a. Under these circumstances, to have required the commissioner of highways to obtain the consent in writing of the board of town auditors to the extension in 1948 of a rate greater than .125 and to appear before the board and request such consent, even though both he and the board knew the rate would not be greater than .125, would have been futile. The law does not compel the performance of a useless act.

The board of town auditors of Friends Creek Township did not give its written consent to the extension by the commissioner of highways for an increase in the maximum statutory rate limitation for road and bridge purposes of 25 cents for each $100 of assessed valuation for the year 1945. No question is presented with respect to the validity of the 1945 taxes. The maximum rate extended in 1945 is not the same as the maximum permissible rate and, so far as the objection to the tax levy of the township for the year 1948 is concerned, the fact that the consent of the board was not obtained for the year 1945 is immaterial.

The objections to the taxes levied by the seven townships for road and bridge purposes were properly overruled.

Defendant also objected to the 1948 taxes of Macon County Non-High School District No. 200. All the territory of a county not included in a township high school district or other high school district is a non-high school district for the purpose of levying a tax to pay the tuition of eighth grade graduates residing therein at high schools in other school districts. On January 1, 1947, the Macon County Non-High School District embraced over seventy-five sections of land, mostly in the vicinity of Decatur. By January 1, 1948, the territory of the district had been reduced to about seventy sections and by July 1, 1948, the district had been reduced to a fraction of two adjoining sections containing 312½ acres. This last loss of territory

resulted from the organization of various supervening community unit school districts within the former territory of the district and from two annexations to Decatur School District No. 61.

In 1946, and particularly, in 1947, the non-high school district incurred considerable indebtedness to other school districts for the tuition of eighth grade graduates residing within the district as it then existed. Although, in 1948, the district had sufficient assets to discharge all unpaid tuition claims for 1946, amounting to $25,067.03, and part of the claims accruing in 1947, there still remained a net debt of $109,679.26 for 1947 tuition claims. The challenged levy, adopted October 5, 1948, in the sum of $109,679.26, was made for the sole purpose of paying these claims.

The levy was made by the board of education and extended by the county clerk against all the lands within the district as it existed in 1947, pursuant to the provisions of section 11-19 of the School Code. (Ill. Rev. Stat. 1947, chap. 122, par. 11-19.) This section declares:

"If any non-high school district is indebted, the territory constituting the district at the time the indebtedness is incurred shall remain liable for the indebtedness even though a part of the territory is detached from or ceases to be a part of such district.

"The board of education * * * shall also file with the county clerk a statement * * * showing the amount of indebtedness of the district remaining unpaid, the time when the indebtedness was created, the changes in the boundary of the district and the date of such changes.

"The board of education shall determine and certify to the county clerk the amount of tax required for the purpose of paying the indebtedness and the county clerk shall extend a rate of tax upon all the territory so liable for the indebtedness necessary to raise the amount thereof. * * * The taxes levied hereunder shall be in addition to other taxes levied by such districts for current purposes."

Defendant owned no land within the district as it existed at the time of the levy on October 5, 1948, but did own land within the district as it was constituted in 1947. Attacking the tax in its entirety, defendant, by its objection, charged and, upon appeal, contends that there was no non-high school district in existence in Macon County at the date of the levy. Section 11-1 of the School Code (Ill. Rev. Stat. 1947, chap. 122, par. 11-1,) provides, in part, that "All the territory of each county not included in a township high school district or a community high school district or a district maintaining a recognized four year high school is a non-high school district * * *." In view of the fact that 312½ acres in the county were not included in any school district maintaining a high school, the non-high school district was legally in existence on October 5, 1948. The mere circumstance that a non-high school district is small and may, at any given moment, have no children of high-school age residing within its boundaries has no effect upon the existence of the district. A district of this character continues to exist, both in fact and in law, for the purpose of paying its lawful debts and for the accommodation of eighth grade graduates who may reside within the district at a future date. Contrary to the contention of defendant, the incorporation of most, but not all, of the former territory of the non-high school district into other school districts did not result in the automatic dissolution of the district and the transfer of all its assets and liabilities to the other school districts. *People* v. *Deatherage,* 401 Ill. 25, and *Kocsis* v. *Chicago Park Dist.* 362 Ill. 24, holding that where two or more municipal corporations are consolidated or the entire territory of one municipal corporation is annexed to another the identity of the consolidated or annexed corporations is lost and, in the absence of a statutory provision to the contrary, their indebtedness becomes a liability of the consolidated or annexing corporation, are not applicable here

for the adequate reason that the entire territory of the non-high school district was neither consolidated with nor annexed to other school districts.

Defendant's remaining contention that, even assuming the existence of the non-high school district, the tax is illegal, is equally without merit. Defendant does not object to the tax upon constitutional grounds. Consequently, *People ex rel. Bergan* v. *New York Central Railroad Co.* 390 Ill. 30, cited by defendant, has no bearing upon the determination of the instant case. Our decision in the *Bergan case* is limited to the proposition that the section of the former School Law, purporting to authorize a non-high school district to issue bonds against detached territory for the payment of indebtedness incurred prior to detachment, (Ill. Rev. Stat. 1943, chap. 122, par. 102f,) contravened section 9 of article IX of our constitution. *People ex rel. Smith* v. *Wabash Railway Co.* 374 Ill. 165, also relied upon by defendant, is likewise inapplicable. In the *Smith case*, we held that the provision of section 94e of the School Law, (Ill. Rev. Stat. 1937, chap. 122, par. 102e,) now section 11-19 of the School Code, declaring that taxes against detached territory for the payment of accrued tuition claims "shall be in addition to other taxes levied by such districts for current purposes" does not authorize a tax which, when extended, results in a tax rate in excess of the statutory rate established by other sections of the School Law. In the present case, no question is made that the tax is excessive.

Lastly, defendant complains that the tax is illegal because it was extended to territory lying outside the district at the date of the levy. While, ordinarily, the power of a school district to levy taxes is limited to the property within the boundaries of the district at the time of the levy and a levy of a tax on property in detached territory is illegal, (*Spence* v. *Selcke*, 404 Ill. 98; *People ex rel. Shrout* v. *Long*, 328 Ill. 297,) it is also true that the power to au-

436

thorize a levy of taxes is inherent in the sovereign, speaking through the legislature, except as limited by the State and Federal constitutions. (*Sommers* v. *Patton,* 399 Ill. 540; *People ex rel. McDonough* v. *Mills Novelty Co.* 357 Ill. 285.) In short, apart from constitutional prohibitions, the authority to levy taxes is purely statutory. Defendant does not interpose any constitutional objections and, as previously indicated, section 11-19 of the School Code specifically authorizes a board of education of a non-high school district to levy a tax for prior indebtedness against all the territory constituting the district at the time the indebtedness was incurred. The 1948 levy of Macon County Non-High School District No. 200 having been adopted and extended in conformity with the applicable statute, it follows that defendant's objection was properly overruled.

The judgment of the county court of Macon County is affirmed.

*Judgment affirmed.*