408 Ill. 480 (1951)
97 N.E.2d 463
THE PEOPLE ex rel. George E. Ruchty, Jr., County Collector, Appellee,
v.
CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, Appellant.
No. 31788.
Supreme Court of Illinois.
Opinion filed January 18, 1951.
Rehearing denied March 19, 1951.
*481 HADLEY & LEREN, and O.G. EDWARDS, both of Wheaton, (PALMER LEREN, of counsel,) for appellant.
HAROLD W. NORMAN, and ALLYN J. FRANKE, both of Chicago, JOHN S. WOODWARD, of Wheaton, and WILLIAM E. HOOPER, of Downers Grove, for appellee.
Affirmed in part and reversed in part, and remanded.
Mr. JUSTICE GUNN delivered the opinion of the court:
The Chicago, Milwaukee, St. Paul and Pacific Railroad Company, appellant, after first complying with the provisions of the statute preliminary thereto, filed certain objections to taxes extended for school and village purposes in Du Page County. The school tax objections relate to the educational levy for School District No. 2, and High School District No. 100, and the building fund for District No. 2. The objection to the village of Wooddale corporate fund is to the entire amount extended, except the rate for bond and *482 interest requirements. All of the objections were overruled by the county court, and judgment entered against the objector, and the appeal is direct to this court.
The objections to the educational school levies involve a construction of section 162a of the Revenue Act of 1939, (Ill. Rev. Stat. 1945, chap. 120, par. 643a,) together with article 17 of the School Code, (Ill. Rev. Stat. 1945, chap. 122, par. 17-1 et seq.) relating to school taxes. These objections involve the application of section 162a before it was amended in 1947.
Considering first the facts relating to School District No. 2: In 1945 the assessed value of property therein was $1,884,070, with a debased ratio of 25 per cent of full assessed value. During the year 1945 a referendum was held establishing a rate for educational purposes of 1.80 per cent, which produced the sum of $33,913 for educational purposes. After the enactment of section 162a and other statutes in 1945, commonly referred to as the Butler Act, providing for assessing all property at full cash value and cutting existing tax rates in half, it was ascertained that the full assessed value of property in School District No. 2 was $9,669,896, and that to produce the sum of $33,913, plus 10 per cent increase allowed under section 162a for the year 1946, would require a rate of .386 per cent. However, the District certified $56,000 as necessary for educational purposes, which would require a rate of .6081 per cent. This it is claimed is authorized by the fact that on December 28, 1946, a special election was had which fixed a tax rate of 1.125 per cent for educational purposes. The levies were made before the law was amended in 1947, and hence the provisions of the original act of 1945 prevail in this case. The objector claims that the provisions of section 162a limited the levy of the school district to a rate of .386 per cent because the district was without authority to hold a referendum to establish a rate of 1.125 per cent without first establishing the intermediate rates required *483 by other parts of the School Code before such rate could be submitted to a referendum.
This requires a brief examination of the statutes in question. Section 162a was added to the Revenue Act as a separate section, and fixes the maximum percentage of full fair cash value at which taxes may be extended, and gives a certain formula to follow, more fully described and analyzed in Anderson v. City of Park Ridge, 396 Ill. 235, but provided that during a five-year period the amount of tax could not exceed 105 per cent of that produced by previous tax extension rates, with a proviso that the rate may be increased 5 per cent for two additional years, with certain exceptions not pertinent here. Provision was also made for the establishing of a tax rate limit either higher or lower than otherwise provided by the formula by a referendum. And, there was another like provision, that if no law provided for a tax rate limit higher than authorized by any statutory provision, the amount that such tax rate limit could exceed the applicable statutory limit, by a referendum authorized under section 162a, should be 25 per cent.
At the same session of the legislature at which section 162a was enacted article 17 of the School Code was amended, by which the rates of taxes to be levied or voted for school purposes were reduced, so that under each separate section providing for a tax or increase in taxes, the amount formerly authorized was reduced by half. It apparently was the intention of the legislature by establishing the assessment of property at 100 per cent of value, and reducing the rate of tax by one half, to make the operation of the statute uniform throughout the different counties, where different ratios of debased values to full values existed. The other provisions and exceptions were obviously for the purpose of taking care of those instances where a very low valuation, or a value nearing 100 per cent existed, when it would be necessary to either increase or *484 decrease the tax rate to put the municipality upon as favorable a basis as it had before the enactment of the statute.
Article 17 of the School Code, as amended, provided different rates at which taxes could be extended under different circumstances. Section 17-2 provided for a general tax rate of.50 per cent for educational purposes, and .1875 per cent for building purposes in districts of less than 500,000 inhabitants, while section 17-3 provided that, if the school board desired to raise more money than was authorized by section 17-2, by referendum the educational rate could be raised to .75 per cent, and the building rate increased .25 per cent. And likewise, in the same manner, by section 17-5 it was provided that if the school board in such district, which had authorized .75 per cent for educational purposes as provided by section 17-3, desired, it could by resolution have an election to levy not more than .90 per cent for educational purposes. And, finally, by the provision of section 17-5.01, it was provided that if the school board in such district had been authorized to levy .90 per cent for educational purposes, as provided in sections 17-2, 17-3 and 17-5, and desired to levy more, the question could be submitted to a referendum to levy 1.125 per cent for educational purposes.
It is to be noted that sections 17-2, 17-3, 17-3.1, 17-4, 17-5, 17-5.01 and 17-5.02, after being amended, had added to each of them the following language: "Provided, further, that the foregoing limitations upon tax rates are subject to the provisions of Section 162a of the `Revenue Act of 1939,' filed May 17, 1939, as amended. As amended by act approved July 25, 1945."
Under these several sections of article 17 of the School Code it is the contention of the appellant that the referendum authorizing a rate of 1.125 per cent could be had only under section 17-5.01, and that it was possible to increase the rate by referendum under this section only after first taking the steps required by section 17-3 and section *485 17-5, and that consequently the authorization in this manner was void, and no tax could be levied thereunder.
Under the statute as it existed up to the amendment in 1947, we think there can be no doubt but what it was the intention of the legislature to have both acts considered together, and that the reduction in tax rates for school purposes was a part of the plan by which the requirement of assessment of property at full value would become uniform and equal throughout the different counties. Appellee contends, however, that the district had a right to hold any of these elections, as provided by sections 17-1 to 17-5.01, at any time, but submits nothing to substantiate this view, since each succeeding section recites that if the board desires to raise more money than is raised by previous authorizations, it can then proceed to hold a new election for additional money. We think these successive steps were required in view of the fact that section 162a limited the period of time providing for stepping up rates gradually, and not allowing an abrupt raise in tax rates, as difference in low debased values might justify.
If it was necessary for the school authorities to go through these several steps before they were justified in levying the rate of 1.125 per cent submitted by the election of December 28, 1946, it is quite clear that the election would be void and of no effect whatsoever, with the result that there was no legal rate adopted by the election of December 28, 1946. People ex rel. Birch v. Pennsylvania Railroad Co. 375 Ill. 85; People ex rel. Willard v. Chicago and North Western Railway Co. 402 Ill. 28.
Epitomized, the situation and condition of the law up to the amendment of July 22, 1947, might be briefly stated as follows: Subparagraph 5 of section 162a provides: "No proposition to increase a tax-rate limit in accordance with the provisions of this section shall be submitted unless the tax-rate limit in question stands at the maximum that may be secured by the terms of any referendum elsewhere *486 provided for by law." Other provisions of section 162a provide for a maximum extension rate, so that if the rates as reduced by the different paragraphs and subparagraphs of section 162a provide a rate limit lower than .75 per cent, the next referendum under the School Code could not exceed .75 per cent for educational purposes; or, if the rate as reduced by section 162a is more than .75 per cent, but less than .90 per cent, the next rate for which a referendum may be held is .90 per cent.
In other words, the first referendum rate authorized by the School Code is .75 per cent for educational purposes, and before a district can hold a referendum for the highest rate they must be first authorized by referendum to extend a .75 per cent rate before any further increases by referendum are authorized. This construction favors the taxpayer rather than the power to tax, and we have always held that in construing powers to tax, in case of doubt the construction is in favor of the taxpayer. (People ex rel. Dooley v. New York, Chicago and St. Louis Railroad Co. 371 Ill. 522.) Under this construction, the election of December 28, 1946, being illegal, the rate of taxation for school purposes must be determined from the rate authorized by law rather than the rate authorized by the illegal referendum of December 28, 1946.
This brings forward a proposition not discussed by counsel for either side. Under section 17-2 school districts had a right to levy .50 per cent for school purposes. However, this school board in District No. 2 had previous to 1945 voted a rate of 1.80 per cent. At that time Du Page County had its property assessed on a debased ratio of .25 per cent, so the application of 162a, with the valuation of 100 per cent and cutting the maximum extension rate in half, would reduce this 1.80 per cent rate to .45 per cent, which, with two raises of 5 per cent would equal .495 per cent. When the referendum of December 28, 1946, is found illegal, the power of the school board to tax reverts *487 to its general power under section 17-2. Before 1945 this was $1.00, but was reduced to .50 per cent that year. However, the rate of 1.80 per cent had been voted and remained in force until revoked by an election, and remained in force because the election of December, 1946, was void. Therefore, the tax rate of 1.80 per cent then existing was subject to the operation of section 162a, which, as pointed out above, would allow a rate of.495 per cent to be extended in 1947. The clerk, however, extended the taxes at the rate of .6081 per cent, which was excessive to the extent of .1131. This result is reached by assuming that the rate of 1.80 per cent, having never been recalled by a legal election, remains in effect under the provisions of the statute and until revoked by a legal election. We have placed this construction upon this provision of the School Code. People ex rel. Willard v. Chicago and North Western Railway Co. 402 Ill. 28; Board of Education v. Wagemann, 331 Ill. 428.
The levy for High School District No. 100 was made on July 23, 1947, the day after the amendment to section 162a was approved, and, therefore, the provisions of the amendment apply to it. Previous to the enactment of section 162a in 1945, a rate of $1.50 had been established for this district. Necessarily this was by referendum, as no authority existed by statute at that time for such a rate without a referendum vote.
The School Code (Ill. Rev. Stat. 1947, chap. 122, pars. 17-2 to 17-5.02) was also amended in 1947, leaving substantially the same provisions and methods of fixing and changing tax rates as noted above under the 1945 law, with this exception, that the proviso made the limitations on rates "subject to the provisions of the General Revenue Law," instead of "subject to the provisions of Section 162a of the Revenue Act of 1939." No difference in the effect of these provisos has been suggested to us.
Since the substantive provisions of the statute, after changing school tax rates by the 1947 act, are the same as *488 those of the 1945 act, the rate of $1 voted by High School District No. 100 in the election of 1946 was illegal for the reasons set forth relating to the election of 1946 pertaining to the rate for School District No. 2. This being the fact, the rate of $1.50 established in 1945 is still in effect, but subject to the amended section 162a enacted in 1947 instead of the same section as enacted in 1945, since this rate is not controlled by any of the exceptions to the 1947 act applying to tax rates voted after December 31, 1945.
From the foregoing it appears that the tax rate for High School District No. 100 should be ascertained in the same manner as the rate for School District No. 2, except that the formula set out in the 1947 version of section 162a should be applied instead of that contained in the act of 1945.
The objection to the levy for building purposes in School District No. 2 is based entirely upon the premise that section 162a of the Revenue Act applies to the tax authorized for building purposes by section 17-7 of the School Code. The rate levied was .0625 per cent upon the valuation produced by the 100 per cent assessment. It is unnecessary to go into the details of the amounts of taxes produced by either the levy or what the appellant claims is the proper levy, because it is our view that section 162a of the Revenue Act, as it existed at the time the levy was made, did not apply to taxes levied for building purposes under section 17-7 of the School Code. There is a noticeable difference not only in the statute, but in the obligation to levy building taxes for school purposes. Bonds and interest obligations may be incurred for buildings which must be paid for from the building tax. If bonds are issued and sold to the public it is the duty of the county clerk to extend taxes for the payment of the principal and interest of these bonds, whether properly or improperly levied by the school authorities, (Illinois Constitution, art. IX, sec. 12; People ex rel. Hicks v. New York, Chicago and St. Louis *489 Railroad Co. 323 Ill. 493,) and section 17-7 of the School Code recognizes this obligation.
But, in addition to requiring enough taxes to be levied to pay interest and sinking fund needs, the statute contains this provision: "Provided, that in no case shall the building rate be reduced to less than .0625 per cent unless a lesser rate will produce the amount levied for building purposes by the district, and the county clerk in such case shall extend a rate not to exceed .0625 per cent for building purposes within the district, notwithstanding the fact that such rate exceeds the building rate which the district may levy under the provisions of Sections 17-2 to 17-4, inclusive." We considered this same section of the School Code in People ex rel. Hutchcraft v. Louisville and Nashville Railroad Co. 396 Ill. 502, when it contained substantially the same language, except the minimum rate allowable was .125 per cent, and we there commented that the law was so designed and intended that there might always be at least the mentioned rate saved for building purposes. It appears, therefore, that section 17-7 provides for a minimum rate for building purposes.
There is another noticeable difference between the sections of the School Code providing for the educational fund and those of section 17-7. In all of the provisions of the statute relating to educational funds that we have discussed above, it is expressly provided that the limitations upon the tax rates were subject to the provisions of section 162a of the Revenue Act. This limitation is not contained in section 17-7, authorizing the minimum that may be levied for building purposes. It appears that the legislature, when it made section 162a of the Revenue Act a part of the School Code, made it a limitation upon the maximum amount that taxes could be extended for, but as to the rate that could be levied for building purposes it fixes a minimum to be levied for the same, regardless of other limitations.
*490 However, in the present instance the tax was not extended for the full amount of .0625 per cent, but was extended only to the amount that would take care of the certified item of $5700 for building purposes, or a rate of .0619 per cent. This does not exceed the amount allowable under section 17-7, and complies with the requirement that the levy be only sufficient to take care of the amount certified. We think this objection was ill-founded.
The final objection is to the levy for corporate purposes of the village of Wooddale. The village filed with the county clerk a certified copy of its levy ordinance on September 8, 1947. Said levy ordinance does not show what was appropriated for each purpose and object, but merely shows the amount levied, and therefore, does not comply with section 16-1 of the Revised Cities and Villages Act, which provides that the ordinance must specify in detail the purposes for which the appropriations have been made, and the amount appropriated for each purpose, respectively. This levy ordinance did not comply with the statute, and we have held that if a levy fails to comply with the statute it is illegal. People ex rel. Prindable v. New York Central Railroad Co. 397 Ill. 50.
Appellee, however, says that the village filed with the county clerk its appropriation ordinance, which showed the amount in detail, which the law requires shall appear in the tax levy ordinance. There is nothing in the tax levy ordinance which makes any reference to the appropriation ordinance, and hence it does not comply with the law. We think there can be no question but that the tax levy ordinance as to the village of Wooddale was defective in this respect, and that objection should be sustained.
In view of the foregoing, the judgment of the county court of Du Page County, in overruling objection No. 12 to the educational tax of School District No. 2, and objection No. 19 to the educational tax of High School District No. 100, is reversed and the cause remanded to said *491 county court, with directions to proceed in accordance with the views expressed herein. It is further ordered that the judgment of the county court in overruling objection No. 24, relating to the corporate levy for the village of Wooddale is reversed and the cause remanded, with directions to sustain said objection. It is the further order of the court that the judgment of the county court of Du Page County in overruling objection No. 13, relating to the building tax fund of School District No. 2, is hereby affirmed.
Affirmed in part, and reversed in part, and remanded, with directions.