(No. 32109, 32110.—

THE PEOPLE *ex rel.* Lulu M. Ross, County Collector, *vs.* CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY *et al.*, Appellees.— (BOARD OF EDUCATION, SCHOOL DISTRICT No. 71, Appellant.)

*Opinion filed November 27, 1951—Rehearing denied Jan. 21, 1952.*

J. L. Brearton, of Savanna, for appellant.

C. W. Krohl, and R. W. Spangenberg, both of Chicago, Franklin U. Stransky, of Savanna, and Ralph M. Eaton, of Mount Carroll, for appellees.

Mr. Justice Schaefer delivered the opinion of the court:

The defendants, the Chicago, Burlington and Quincy Railroad Company and Chicago, Milwaukee and St. Paul Railroad Company, filed objections in the county court of Carroll County to the application of the county collector for judgment for the sale of real estate for the nonpayment of taxes for the year 1948 levied by School District No. 71 for educational purposes. The board of education for the district was permitted to file an intervening petition. From judgments sustaining defendants objections, the intervenor has prosecuted two separate appeals. These appeals have been consolidated.

The determining question is whether or not the school district, in conducting a referendum to increase its tax rate, complied with pertinent statutory requirements. The referendum in question was held on April 10, 1948, and purported to authorize a tax rate for educational purposes of .90 per cent on each $100 of assessed valuation. Defendants contend that the referendum election was void because at the time it was held the district was not authorized to conduct a referendum for a rate of .90 per cent, but was limited by statute to a referendum for a rate not exceeding .75 per cent.

Section 17-2 of the School Code, as it existed at the time of the levy in question, provided for a normal maximum tax rate of .50 per cent for a district of the type

here involved. Section 17-3 provided for an increase of that rate by referendum to a rate of .75 per cent. Section 17-5 provided that a district which had previously been authorized to levy at a rate of .75 per cent might be authorized by referendum to levy a rate of .90 per cent. Provision for another progressive increase by referendum was contained in section 17-5.01. In each case authority to seek an increased rate by referendum was conditioned upon prior referendum approval of the next lowest authorized rate, and in each case it was also expressly provided "that the foregoing limitations upon tax rates are subject to the provisions of the General Revenue Law of Illinois." Ill. Rev. Stat. 1947, chap. 122, pars. 17-2, 17-3, 17-5, 17-5.01.

At a referendum election on April 10, 1943, the voters of School District No. 71 had authorized the levy of a rate of 1.50 per cent which was reduced by subsequent legislation to .75 per cent. Apparently relying upon the rate of .75 per cent thus authorized as a compliance with the provisions of section 17-5 of the School Code, the school board submitted its proposal of April 10, 1948, for an increase to .90 per cent. It was held, however, in *People ex rel. Ruchty* v. *Chicago, Milwaukee, St. Paul and Pacific Railroad Co.* 408 Ill. 480, that the existing authorized levy, which was an essential prerequisite to a referendum increase under the provisions of article 17 of the School Code, was to be determined after applying the formulas provided in section 162a of the Revenue Act for determining maximum levies during the period of transition to Statewide full-value assessments.

Section 162a of the Revenue Act (Ill. Rev. Stat. 1947, chap. 120, par. 643a,) at the time here involved provided, "* * * no tax for any fund of any taxing district shall be extended at a rate requiring a greater percentage than, and no tax rate necessary to produce the amount of a levy

for any fund of any taxing district shall be restricted to a lesser percentage than, 105% of whichever is the lower of the following: (a) The product of: (i) the 1942 ratio of assessed to full, fair cash value reported and published by the Department for the county in which the taxing district is situated, * * * (ii) the maximum tax rate for that fund of the taxing district in effect or authorized prior to January 1, 1946, whether established by referendum or by statute; or, (b) the rate produced by dividing the maximum permissible 1945 tax extension for that fund of the taxing district by the 1946 full 100% fair cash value of the taxable property in the taxing district; provided that the maximum permissible 1945 tax extension shall be computed by use of the maximum tax rate in effect or authorized prior to January 1, 1946, whether established by referendum or statute, applied to the 1945 assessment." The third paragraph of subsection (1) of section 162a declared that the foregoing provisions should in no way be construed to affect tax rates of the following, among other categories: "(b) those for levies established by popular vote after December 31, 1945, (c) those subject to limits established by referenda held after December 31, 1945." Subsection 2 of section 162a dealt with maximum rates authorized by any referendum held prior to January 1, 1946, and provided "that all such tax rates authorized by referenda shall be subject to the provisions of subsection (1) hereof."

Of the two methods provided by subsection (1) of section 162a for ascertaining the authorized tax rate, application of the second method produces the lower rate. This method consists of determining the rate by dividing the maximum permissible 1945 tax extension by the 1946 full 100 per cent fair cash value of the taxable property in the district. The maximum permissible rate for the year 1945 was 1.50, (See: *People ex rel. Bailey* v. *Illinois Central Railroad Co.* 407 Ill. 426,) the 1945 assessed valuation was

$3,425,619, and the resultant maximum permissible 1945 tax extension was $51,384.28. The rate produced by dividing $51,384.28 by the 1946 full 100 per cent assessed valuation of $9,240,587 is .556. The actual rate permitted was 105 per cent of the lower of the two rates determined in accordance with the formulas of subsection (1), that is, 105 per cent of .556 which is .584.

When the election was held on April 10, 1948, School District No. 71 was entitled to levy only .584 per cent instead of .75, the rate which was prerequisite to the holding of a referendum to obtain authority to levy .90 per cent under section 17-5 of the School Law. It follows that the election of April 10, 1948, purporting to authorize a maximum rate of .90 per cent was invalid, and that the maximum extendible rate immediately before and after the election was .584 per cent. This being so, the rate of .864 extended was excessive to the extent of .280, as the county court held.

The decision in this case is controlled by *People ex rel. Ruchty* v. *Chicago, Milwaukee, St. Paul and Pacific Railroad Co.* 408 Ill. 480. It is true that the earlier case is concerned with the validity of an election held prior to the effective date of the 1947 amendments to section 162a of the Revenue Act, while here the election was subsequent to the day the amendments became effective. But the principal question presented in the earlier case and the sole question here is whether a school district whose maximum rate under section 162a of the Revenue Act was less than .75 per cent had authority to increase its maximum rate to .90 per cent by a single election.

Upon the authority of *People* v. *Chicago, Milwaukee, St. Paul and Pacific Railroad Co.* 408 Ill. 480, the judgments of the county court of Carroll County are affirmed.

*Judgments affirmed.*