THE PEOPLE *ex rel.* William M. Price, County Collector, Appellee, *vs.* THE ILLINOIS CENTRAL RAILROAD COMPANY, Appellant.

*Opinion filed February 17, 1915.*

1. TAXES—*purpose of section 56 of Roads and Bridges act of 1913, concerning approval of tax by county board.* The purpose of the provision of section 56 of the Roads and Bridges act of 1913 vesting in the county board a supervisory power over the road and bridge taxes certified to by the highway commissioners, was to safeguard the interests of the tax-payers by requiring the county board to exercise its judgment upon the levy and approve the same, or a part thereof, in its discretion.

2. SAME—*approval of county board is necessary to valid road and bridge tax.* The approval, by the county board, of the road and bridge taxes in any town or road district is necessary to a valid levy under section 56 of the Roads and Bridges law of 1913.

3. SAME—*what is not an approval by county board of road and bridge taxes.* A general direction in the resolution of the county board that the county clerk shall extend on the tax books "all State, county, town, road and bridge, school and all other authorized taxes that are or may be certified to him by the proper authorities," does not amount to an approval by the county board of the road and bridge taxes certified by the highway commissioners, as there can be no delegation to the county clerk of duties to be performed by the county board.

4. SAME—*record is the best evidence of proceedings of county board.* The county board is a body corporate, has a clerk and is required to keep a record of its proceedings, and the record is therefore the best evidence of what is done by such board.

5. SAME—*levies for building purposes and educational purposes are distinct.* The limitation fixed by statute as to the rate which may be levied for building purposes and educational purposes, respectively, must be observed, and it is not lawful to supplement a shortage in the fund for one purpose by an excessive and unnecessary levy for the other.

6. SAME—*effect where amount levied for building purposes is slightly in excess of amount needed.* If the board of education, acting in good faith, estimates the amount it will require for building purposes, the fact that such estimate proves to be slightly in excess of the amount actually needed does not justify a refusal to pay the tax.

7. SAME—*what competent as tending to show excessive levy for building purposes.* Where it is claimed, and there is evidence tending to show, that the amount levied for building purposes is greatly in excess of the amount actually needed, it is competent to show that the amount levied for educational purposes is less than the amount required for such purposes.

8. SAME—*when tax for building purposes is illegal.* A tax for building purposes which is largely in excess of the amount which is really required for such purposes cannot be said to be legally levied, even though the rate is within the limit fixed by statute. (*People* v. *Hassler,* 262 Ill. 133, distinguished.)

APPEAL from the County Court of DeWitt county; the Hon. FRED C. HILL, Judge, presiding.

LEMON & LEMON, (JOHN G. DRENNAN, of counsel,) for appellant.

LOUIS O. WILLIAMS, State's Attorney, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Appellee, as county collector of DeWitt county, made application for judgment and an order of sale for delinquent taxes to the county court of said county at the June term, 1914. The Illinois Central Railroad Company filed objections to the road and bridge taxes in the towns of Clintonia and Harp and to a portion of the district school tax in district No. 60. The objections to the road and bridge taxes in the towns named is, that said taxes were extended by the county clerk without the same having been presented to, considered and approved by the county board at its September meeting in 1913. The objection to the school tax in district No. 60 is, that the levy made in said district for building purposes is so far in excess of the needs of the district for such purposes as to amount to a fraud upon the tax-payers; that said levy for building purposes was made largely in excess of the requirements of the district for such purposes and that said levy was a mere subterfuge, by means of which the school authorities in-

tended to provide an educational fund in excess of the amount that could legally be levied for such purpose. The road and bridge taxes in the towns of Clintonia and Harp were levied under the same circumstances and may be considered together.

Appellant introduced in evidence the complete record of the proceedings of the county board for its September, 1913, meeting, and the record of all subsequent meetings of said board between the said September meeting and the hearing of the objections in the county court. It is admitted that the only reference to or order pertaining to the road and bridge taxes in question is found in a resolution which was adopted by the county board at its September meeting. That resolution, in so far as it has any bearing upon the question before us, is as follows:

*"Be it further resolved by the board of supervisors of the said county of DeWitt at the said September session,* that to raise the sum of money appropriated for the expenses of said county of DeWitt for the ensuing year of 1914, that the total sum of $59,800 be and the same is hereby levied against all the lands, lots, personal property and corporations of the said county of DeWitt at a rate of fifty cents on each $100 assessed valuation as finally determined and fixed upon by the board of review of the said county of DeWitt for the year A. D. 1913, and that the county clerk of said county of DeWitt is hereby empowered and instructed to extend on the tax books of said county of DeWitt, all State, county, town, road and bridge, school and all other authorized taxes that are or may be certified to him by the proper authorities, and that the same doth constitute the entire tax levies of said county of DeWitt for the current year to raise the sums of money appropriated and levied for the ensuing year."

Section 56 of the Road and Bridge law which went into effect July 1, 1913, and under which the road and bridge taxes in question should have been levied, provides that the board of highway commissioners, at its regular meeting to be held on the first Tuesday in September, shall determine and certify to the board of supervisors or board of county commissioners the amount necessary to be raised by taxation for the construction and maintenance of roads and

bridges in such town or road district; that such certificate should be filed in the office of the county clerk and by that official presented to the county board at its regular September meeting for consideration; that the amount so certified by the highway commissioners, "if approved by the county board, or such part thereof as the said board shall approve, shall be extended by the county clerk as taxes against the taxable property of such town or district." A proviso in said section limits the rate for roads and bridges to sixty-one cents on each $100 valuation of the taxable property of the town or district, and provides that if the amount of taxes "approved by the county board shall be in excess of such rate it shall be the duty of the clerk to reduce the same to said rate of sixty-one cents upon each $100 of the assessed valuation of said town or district." The manifest intention of the legislature in vesting the county board with a revisory power over the road and bridge taxes certified to by the highway commissioners was to safeguard the interests of the tax-payers by requiring the county board to exercise its judgment upon the levy and to approve the same. The statute clearly contemplates that the county board may approve the whole amount certified by the highway commissioners, or, in its discretion, only approve a part of the amount certified. That the board of supervisors would have the power to reduce the amount is clearly shown by the language of the statute wherein it is provided that "the amount so certified, if approved by the county board, or such part thereof as the said board shall approve, shall be extended," etc.

The approval by the county board of the road and bridge taxes in any town or road district is necessary to a valid levy under section 56. This court so held under a similar statute passed in 1874. (*Leachman* v. *Dougherty,* 81 Ill. 324.) Section 120 of the Road and Bridge law of 1874 (Rev. Stat. 1874, p. 932,) required the highway commissioners to present to the county board the amount nec-

essary to be raised for roads and bridges and the rate per cent which should be "submitted to said board for their action at such September meeting." In the case above cited this court held that the words "for their action" indicated that the board of supervisors was to exercise a supervision over the highway commissioners' action in making the levy, and that this being so, the requirement of action on the part of the board of supervisors was jurisdictional and the clerk had no power to extend any taxes without such action. Section 56 of the present Road law is more explicit in its requirement of action on the part of the county board than was section 120 of the law of 1874. The present statute expressly requires the approval of the county board, and without such approval the tax cannot be legally levied. The doctrine of the *Leachman case* has been adhered to in later decisions of this court. *Chicago and Northwestern Railway Co.* v. *People,* 184 Ill. 174; *People* v. *Chicago and Eastern Illinois Railroad Co.* 248 id. 596.

Conceding the law to be as held in the authorities above cited, appellee contends that the resolution of the county board above set out shows that the county board complied with the statute. This contention cannot be sustained. The action of the county board should appear from this record. It is made a body corporate, it has a clerk and is required by law to keep a record of its proceedings, and the record is therefore the best evidence of what it did. (*Wabash Railroad Co.* v. *People,* 138 Ill. 303.) There is here no evidence of any character, except the resolution, as to the action of the county board, and that resolution does not show that the road and bridge taxes of the towns in question were approved by said board. There is a general direction in the resolution to the county clerk to extend on the tax books "all State, county, town, road and bridge, school and all other authorized taxes that are or may be certified to him by the proper authorities." This is a general blanket authority to the county clerk to extend any and

all taxes named, certified to him by "the proper authorities."
It leaves the county clerk to determine who are the proper
authorities to certify taxes for extension. There can be
no delegation to the county clerk of duties required of the
county board. The statute required the board to examine
and approve the road and bridge taxes and direct the clerk
to extend the taxes as approved. This the county board
did not do. The resolution does not show that the county
board approved the taxes objected to in the towns of Clin-
tonia and Harp. The court erred in overruling the objec-
tions to these taxes.

The board of education of school district No. 60, which
is the school district in which the city of Clinton is located,
levied $23,692.45 for educational purposes and the same
amount for building purposes. To raise these amounts re-
quired the maximum rate of $1.50 per $100 valuation on
the assessed value of all the property in the district. The
statute authorizes the levy of one and one-half per cent for
educational purposes and the same rate for building pur-
poses. It is the contention of appellant that the $23,692.45
levied by the board for building purposes is excessive, and
that it was the intention of the board to use a very con-
siderable portion of the money arising from taxes levied
for building purposes for educational purposes. The leg-
islature has limited the power of boards of education and
school directors to levy taxes to $1.50 per $100 valuation
for educational purposes, and the same limit is fixed for
levies for building purposes. These limitations should be
strictly observed by the boards authorized to levy taxes. It
is not legal to supplement a shortage, if such exists, in one
fund by an excessive and unnecessary levy for the other
purpose. Where the board, acting in good faith, estimates
the amount that will be required for building purposes, and
it turns out that the estimate is slightly in excess of the
amount actually needed for building purposes, such varia-
tion between the amount levied and that actually used for

266 – 41

such purpose would afford no justification for refusing to pay the tax. In *People* v. *Chicago and Alton Railroad Co.* 257 Ill. 208, this court, on page 212, said: "It would be obviously impossible for a board of school directors to know in advance the exact amount that might be required during the year for 'the improvement, repair or benefit of the school buildings and property.' School boards are expressly authorized by the statute to levy a building tax, out of which they may pay for the improvement and repairs of the buildings and property of the district and expenses for their general benefit. The mere circumstance that in estimating in advance the amount that may be necessary for these purposes a larger amount is levied than that actually required is no reason why a tax-payer should refuse to pay his taxes, unless the amount levied is so grossly excessive as to show a fraudulent purpose in making the levy." In the case above referred to the excess of the levy over the amount actually expended was less than $100 and in one district the expenditure was $169 more than the levy. Discrepancies of this character will inevitably occur in the administration of the School law, and where the difference can be accounted for consistently with an honest effort on the part of the taxing board to observe and carry out the limitations fixed by the statute, such differences should be disregarded and the collection of the tax enforced. In the case at bar the secretary of the board of education was a witness and testified in regard to the needs of the district which were to be taken care of out of the funds arising from the building tax. He testified that $6500 was the maximum amount that would be required for the repairing and improving of school houses, furniture, purchase of fuel, library apparatus and other incidentals necessary to the school district, and that $1000 additional would be necessary to pay a paving assessment levied against the school district. He also testified that $4665 was required to pay bonded indebtedness and interest, and that $2000 would be

required for the purchase of books for free distribution among children whose parents were unable to buy books. These items make a total of $14,165. This witness testified that no new buildings were under construction or contemplation at the time this tax was levied. On a somewhat persuasive cross-examination the witness stated that, some time before, an architect had been employed to make an estimate for a remodeling of an old school building, known as Washington school building. He said that the architect had made such estimate and had reported to the board that it would cost from $10,000 to $18,000 to make the improvements upon the Washington school building. He admitted that the plans and specifications of the architect had never been approved by the board, that no steps had been taken looking to the making of said improvement and no contract had ever been let for such purpose, and the clerk stated that temporary repairs, amounting to less than $1000, had been made on the Washington school building subsequent to the time the estimate for the larger improvement had been made and that this item was included in his original statement. Appellant sought to show by this witness that the excess of the levy for building purposes was intended to be used by the board in the payment of salaries of teachers and superintendents of the schools of the district, and that when collected the levy for building purposes would exceed the highest estimate some $8000 or $10,000. Appellant offered to show by proper questions to this witness that the amount levied for educational purposes was considerably less than the amount required, but the court refused to permit the witness to answer these questions, and in this the court erred. If the existing contracts with teachers and others who were to be paid out of the levy for educational purposes were for an amount substantially larger than was levied and there was a corresponding excess in the levy for building purposes, the evidence which tended to prove this condition was pertinent and should have been

heard. It had a direct bearing upon the question whether the board had in good faith sought to observe the limitations of the statute, or, on the contrary, was seeking to raise money for one purpose in excess of the amount required for such purpose, with the intention of using such excess to make up a deficit in another fund.

Appellee insists that there is no evidence here of a levy so excessive as to impeach the good faith of the taxing officers. With this we are unable to agree. The testimony of the clerk, while not as full and complete as it probably would have been but for the erroneous rulings of the court made on appellee's objections to the questions asked, would warrant the conclusion that the levy for building purposes in school district No. 60 is so far in excess of the needs of the district as to lead us to the conclusion that the board did not in good faith seek to be bound by the limitations of the statute. Under the restricted rulings of the court on the admission of testimony we do not feel warranted in deciding the exact extent to which the levy for building purposes is excessive. We deem it better to reverse the judgment and remand the cause, with directions to the county court to permit a full and fair investigation, and upon such hearing to sustain the objection to whatever amount of excess is shown, above the actual expenditures of the district, for the purposes for which a building fund tax may under the law be used.

The appellee invokes the doctrine laid down in *People v. Hassler,* 262 Ill. 133, where this court held that a tax legally levied might be collected notwithstanding it was apprehended that it might be diverted to some other purpose after its collection. The rule there announced proceeds on the assumption that the tax is legally levied in the first instance, and therein that case is distinguishable from the one at bar. A tax levied largely in excess of the amount required for a purpose with the intent of creating a surplus to be used for another purpose cannot be said to be a legally

levied tax, even though the rate is within the limit fixed by the statute. True, a purpose on the part of disbursing officers to misappropriate taxes legally levied is no reason why the tax-payer should refuse to pay the tax. The remedy in such case is in equity, to enjoin the misappropriation of the funds. The *Hassler case* recognizes, in the last sentence of the opinion, the doctrine that a fraudulent intent in the directors in levying the tax would justify an interference by the court by refusing to enforce its collection.

The judgment of the county court of DeWitt county is reversed and the cause remanded, with directions to sustain the objections to the road and bridge taxes of the towns of Clintonia and Harp and to re-hear the objections to the school tax of district No. 60, and to dispose of the objections in accordance with the views herein expressed.

*Reversed and remanded, with directions.*