The county collector of Cook county applied for judgment and order of sale of certain lands in that county for delinquent taxes for the year 1929. The appellee filed objections to certain items in the levy of taxes for the South Park District. These objections were sustained, and the case is brought here by appeal.
The South Park District passed its annual tax levy ordinance for the year 1927 and included certain items for the payment of maturing bonds and bond interest. These taxes were put in the course of collection. The objector made the fact that they still were in the course of collection at the time the 1929 levy was made, a basis of its objection. On August 13, 1929, the park district passed the annual tax levy ordinance for the fiscal year which began on March 1, *Page 82 
and included therein certain sections numbered consecutively from 8 1/2 to and including 16 1/2, by which it sought to make levies "to pay in part and discharge that portion of the principal of said bonds required to be paid heretofore, the amount of the tax hereby levied being the amount of the difference between (a) the amount levied by the South Park Commissioners for the year 1927 to pay interest as it fell due on said bonds, and that portion of the principal of said bonds required to be paid during the year next preceding the year of said levy; and (b) the amount of taxes actually collected by said South Park Commissioners pursuant to said levy for said year 1927." The various sections, 8 1/2, 9 1/2, etc., to and including 16 1/2, contained this provision referring, respectively, to a bond issue of the municipality.
The levy for 1927 had yielded to the park district up to December 1, 1928, the sum of $8,613,553.63 out of the amount extended by the county clerk, which was $9,620,984.08, after scaling the corporate rate, but not including the amount extended for loss and cost of collection. The appellant contends that of this deficit the amount of $360,639 should be allocated to the bonds and bond interest funds, and that the levy for 1929 was lawfully made to provide this amount to pay the deficit of interest and principal thus created in the respective bonds and bond and interest funds of the district. After the levy for 1929 had been made, and prior to the extension of the tax, further receipts from the levy of 1927 were had from the collector, reducing the deficiency from $360,639 to $238,876.11. The clerk extended the tax for this amount upon authority for the reduction from the park commissioners.
In explanation of the method of accounting used by the appellant in the apportionment of the funds levied and collected for the year 1927, the following data are contained in objector's exhibit 4 as of August 11, 1929, two days before the 1929 levy was made: *Page 83 
[EDITORS' NOTE: TABLE IS ELECTRONICALLY NON-TRANSFERRABLE.]
And in explanation of the allocation of the deficiency levy made on August 13, 1929, South Park exhibit is as follows:
[EDITORS' NOTE: TABLE IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 84 
All moneys received from the county collector out of the 1927 tax levy after the 1929 levy had been made were allotted to the various funds of the South Park District upon the basis indicated in the exhibits, and when so distributed the effect was to reduce the total deficit shown in the last exhibit of $360,639 to $238,876.11.
It will be noted that the total rate extended for all purposes of the district for the year 1927 was forty-seven cents on the $100 valuation, and that out of this the rate for "corporate purposes" extended by the county clerk was .180654. An objection was filed by a tax-payer to the excess above 13.75 cents on the $100 valuation of this item of the levy, which objection was sustained by the county court. This ruling was sustained on appeal by this court in the case ofPeople v. Chicago and Eastern Illinois Railway Co. 343 Ill. 101, where it was held that the invalid portion of that rate was four cents. The assessed valuation of the South Park District for the year 1927 was $2,144,571,099, against which this illegal four cents on each $100 valuation was extended in the amount of $857,828.43. This record does not show how much of this illegal tax was paid or included in the receipts of the South Park District or how much was involved in the objections which were sustained to the tax. The method of distribution shown by the record to have been used by the park district, with reference to all money received from the collection of 1927 taxes, ignores the fact that four cents of the corporate purpose rate was held to be an illegal levy. In addition to the amount of the 1927 taxes as to which judgment was refused, the record is also silent as to what part of the deficit on August 13, 1929, was covered by such items as "real estate forfeited," "personal property delinquent," "pending and appealed," and the like.
The levy of August 13, 1929, was objected to for the reason that it was claimed all bonds, and interest upon bonds maturing in the year 1928 and prior years, were *Page 85 
paid in full at the time the levy ordinance was passed. It was further objected that there were no outstanding bills for the South Park District for the year 1927 at the time the 1929 levy ordinance was passed. It was next insisted that the South Park Commissioners is without power to levy taxes for the purpose of offsetting taxes which were uncollected in prior years and are still in process of collection. It was next insisted that the South Park District is without power to levy taxes to cover forfeitures, cost of collection, or to raise a surplus of taxes for prior years where the bills, bonds and interest, and outstanding obligations of the park district for the prior year in question, are all paid in full. It was last objected that the taxes levied and extended under the sections of the ordinance of 1929 in question are without authority of law and are illegal and void.
The appellant contends that the objections of the appellee should have been overruled because (1) payment at maturity of bonds and interest included in the 1927 levy, out of funds other than taxes collected for that specific purpose, does not operate to invalidate the levy of 1929 for the deficit in collection for the same purpose; (2) that the levy ordinance of 1929 is not invalid, because there were no outstanding bills of the South Park Commissioners for the year 1927 at the time the levy ordinance of 1929 was passed; (3) that the South Park Commissioners has power to make a levy in a succeeding year for a deficit in the collection of taxes for bond interest and redemption arising from a preceding levy; (4) the levy is made to cover an accrued deficit, and is not a levy to cover cost of collection or to raise a surplus of taxes for prior years; and (5) that the method used in determining the amount of the deficit was proper.
The interest and redemption obligations sought to be met by the levy of 1927 amounted to $4,678,980. Of this amount $1,014,280 was paid by the appellant out of other *Page 86 
idle bond funds before the park district received any money from the county collector as proceeds of the 1927 levy. The first money was received from the county collector under the 1927 tax levy on April 26, 1928, and at the end of March, 1928, the appellant had a bank balance of $5,833,696.81, which represented in its entirety improvement bond funds which had been received from the sale of bonds for the various improvements and construction of the South Park District. On March 1, 1928, which was the first day of the 1928-29 fiscal year, there was a deficit in the corporate fund ledger account of $1,086,526.15, and there was no cash in either the bond interest and redemption fund or the corporate fund.
The manner of doing business was to deposit all money received from the collector in the general fund bank account and credit it by various memoranda entries to taxes receivable accounts. The first $4,678,980 received from the collector from the 1927 levy was credited exclusively to the bonds, interest and redemption account, which is one of the taxes receivable accounts mentioned above. Later receipts were thus credited to other taxes receivable accounts, and some time in March, 1929, the final distribution was made, and the deficiency was then ascertained and apportioned, by entries in the various ledger accounts of the separate funds of the district, under date of February 28, 1929, the last day of the fiscal year. Under this system it would appear that there was an over-credit of $360,639 made in the bonds interest and redemption account, and that the total deficit in the five bonds funds, for which items of levy were made in the 1927 tax levy ordinance, aggregates that amount. The record does not show any ordinance or resolution of the South Park Commissioners directing payment of any item of bonds and interest in question from other idle bond moneys or any other account. It is not disputed that the bonds and interest were paid, but it is contended by the appellee that *Page 87 
payment was made out of 1927 tax receipts and not out of idle funds in other bond accounts. In other words, the appellee says that the credit of $4,678,980 made in the bond and interest redemption account and out of the money first received from the county collector as the proceeds of the 1927 levy, is conclusive evidence that the bonds and interest provided for in the 1927 levy were fully and entirely paid from taxes levied and collected for that purpose and not from idle bond funds, and that the appellant had no right to make or to show the book entry by which it appeared that there was a deficit of $360,639 in the five bond accounts.
As a further explanation of the business methods of the park district, it did not carry a separate bank account for each ledger account, and although it had several bank accounts in which it kept its cash, and some of these bank accounts bore names similar to the names of the ledger accounts, the cash in the separate bank accounts did not correspond with the balance shown by the individual ledger account as belonging to a particular fund, although the total cash in bank balanced the total assets shown by the ledger accounts as money in the several funds of the district. There was no attempt at segregating the money of the general fund cash ledger account so that the general fund bank account would contain deposits solely of cash of that ledger account. The general fund bank account consisted of miscellaneous revenue from golf, beaches, parking, etc., at times, tax money, and sometimes idle bond money was commingled therewith. There were no special bank accounts kept for corporate funds or for bond funds. The proceeds of the sale of bonds were usually placed in the special reserve bank account, for the reason that the money in that account earned a higher rate of interest, and for the same reason tax money was usually deposited there. The general fund bank account was used as the working cash account. On the first of each month *Page 88 
sufficient money was transferred from this account or the special reserve fund bank account, whichever of the two happened to have the money in it, to the bond, interest and redemption bank account, to permit payment of bonds and interest payable during that month. It was not the practice to put tax money, as it was received, into the special bond, interest and redemption account. Photostatic copies of two checks, one dated April 2, 1928, for $301,500, and the other June 1, 1928, for $360,800, payable to the treasurer of the bond and interest redemption fund and drawn upon the general fund bank account, illustrate the method used.
This particular levy of 1929 was considered by this court in the case of Gates v. Sweitzer, 347 Ill. 353. Suit was brought by Gates to enjoin the county clerk from extending various items of tax levied by the South Park Commissioners by their tax levy of 1929, amounting to $360,639. General and special demurrers were filed to the bill and the trial court sustained the demurrers, which ruling was affirmed by this court. The allegations of the bill in that suit sought to raise practically the same questions as are here urged against the validity of this tax. We there held that the bill did not allege that the bonds and interest, payment of which was sought to be provided for by the 1927 tax levy, were paid out of funds applicable to their payment, or that the 1929 levy was made for the purpose of re-levying tax forfeitures, judgments refused or taxes in process of collection, and it was therefore obnoxious to demurrer. The appellee has in this proceeding specifically raised those matters in its objection to the application for judgment, but a careful consideration of all the testimony presented in this record fails to show that such objections have been supported by proof. It is not objected or argued that at the time the 1929 levy was made the 1927 tax levy had been fully collected. There is clearly a deficit in the collection of that levy of more *Page 89 
than a million dollars. The record contains no evidence tending to show that this deficit should be apportioned to the other items of the 1927 levy exclusive of the bond and interest items. The appellee relies in this particular for proof of payment, upon memorandum entries in the books of the appellant made without any apportionment of tax money, at the time the first five million dollars, approximately, was received out of the collection of the 1927 levy. That this does not furnish the proof required is evident from the fact that more than a million dollars of other funds had already been used to pay the maturity of such bonds and interest before the receipt of any part of the proceeds of the 1927 tax levy, and the method of keeping books used by the district was merely a temporary crediting of moneys received, with a final, accurate adjustment and apportionment of receipts to be made at the close of the fiscal year. Moreover, if the money had been distributed accurately, according to the forty-seven cent tax rate of the appellant for 1927, as it was received, since there was a general or aggregate unitemized deficit of more than a million dollars, the deficit of $360,639 would have existed when the 1929 levy was made. There was no error, in our view of the matter, in charging their proportionate part of the total deficit of 1927 tax receipts to the various bond accounts, after the original memorandum entries had been made, which, if they had been allowed to stand, would indicate collection in full of all moneys due to such accounts under the 1927 tax levy. The law did not require the appellant, as argued by appellee, to take whatever sum was collected by reason of the four cents excessive and invalid portion of the 1927 general corporate purposes rate and apply the total thus received, or any part thereof, to the payment of bonds and interest, or to use any part of this money to replace, permanently, moneys borrowed from other funds to pay bonds and interest. The *Page 90 
only portion of the 1927 tax levy's proceeds which was required to be credited permanently to the bond and interest funds was what was raised by the respective rates which went to make up the 1927 total tax levy, regardless of any money collected through the extension of excessive and illegal part of another separate item.
The appellee objects and states that the 1927 levy was still in the process of collection when the 1929 levy was made. In support of its objection it shows that further items of receipts were had after the date of the 1929 levy, and that the original amount of the levy, $360,639, was reduced by direction of the appellant, and but $238,876.11 was extended by the county clerk under the 1929 levy for this item. There is no further evidence as to the disposition of the remaining portion of the deficit in the 1927 tax levy. The appellee did not show any evidence of a reasonable expectation of further receipts from that levy, from which we could determine that a reasonable time had not elapsed when the 1929 levy was made, at the end of which the appellant would have a right to make a new levy to cover the deficit in collection of the amounts required and levied by the 1927 ordinance.
It was held in Gates v. Sweitzer, supra, that municipal officers are charged with the duty of protecting the credit of the municipality. Liabilities accruing during the year during which and for which a levy is made may be paid out of money borrowed temporarily from other idle funds generally. The appellant in this case owed a duty to restore the funds which had temporarily been diverted to the payment of the bonds and interest in question, and was authorized to make a levy to restore such borrowed funds under the facts in this case.
Taxes are presumed to be just, and the burden rests upon the objector, or one assailing a tax, to show its invalidity. (Kelly v. Jones, 290 Ill. 375.) We hold that the objector has failed to prove facts to sustain its objections. *Page 91 
It may be further observed that the indebtedness for which the additional levy was made in 1929 was a bonded indebtedness, and that under section 12 of article 9 of the constitution of Illinois the appellant was required not only to make the levy, but, in fact, to collect as well, sufficient funds to pay and discharge the interest due in 1927 and the bonds maturing during 1928. This provision of the constitution is mandatory and self-executing. The bonds had been authorized and funds for their payment must be provided.
The judgment of the trial court is therefore reversed and the cause is remanded to the county court of Cook county, with directions to overrule the objections of the appellee.
Reversed and remanded, with directions.