(Nos. 32333, 32334.—

THE PEOPLE *ex rel.* John T. Harding, County Collector, Appellee, *vs.* CHICAGO AND NORTH WESTERN RAILWAY COMPANY, Appellant.—Same Appellee *vs.* SUPERIOR COAL COMPANY, Appellant.

*Opinion filed September 17, 1952.*

HUGH J. DOBBS, of Springfield, and NELSON TROTT-MAN, of Chicago, (LOWELL HASTINGS, of counsel,) for appellant Chicago and North Western Railway Co.; MILES GRAY, of Springfield, for appellant Superior Coal Co.

EDWARD R. PHELPS, State's Attorney, of Carlinville, and PAUL C. VERTICCHIO, of Gillespie, for appellee.

Mr. CHIEF JUSTICE CRAMPTON delivered the opinion of the court:

The only questions presented by these disputes are the merits of two tax objections filed by the objector-appellants in two separate appeals. The cases were heard separately on the same day before the county court of Macoupin County, which court overruled the objections to certain 1949 delinquent taxes for educational and building purposes of High School District No. 184, paid under protest by objectors, objection having been made upon application of the county collector of Macoupin County for sale of lands. The issues in both cases are identical and the appeals were consolidated here for opinion.

Objectors filed written objections and the cases were submitted to the court below upon stipulation, exhibits, and the testimony of the secretary of the school board. There

is no dispute concerning the governing facts. The district concedes objectors properly stated and applied the formulas for the computation of the tax rates under section 162a of the Revenue Act (Ill. Rev. Stat. 1951, chap. 120, par. 643a,) and that the maximum established rate for educational tax purposes for the year 1949, the only year in dispute in any of the objections, would have been 45.1 cents on each $100 of assessed valuation of objectors' property, computed and based upon a rate approved at an election held on April 8, 1944, later reduced 50 per cent by subsequent legislation.

On April 10, 1948, the district purportedly approved by election a rate of seventy-six cents, and it is claimed this election is null and void for the reason the district failed to follow the statutory requirements in that no election was held to first increase the said 45.1 cent rate to fifty cents and no election held to increase said rate to seventy-five cents before the authorization of said seventy-six-cent rate and that the seventy-six-cent rate is therefore excessive and illegal to the extent of 30.9 cents. It is conceded by the school that no other elections were held other than the two above referred to.

This objection may be quickly disposed of. We deem it unnecessary to unduly extend this opinion by a reprint of the formulas, a recital of all the pertinent items, and levies, for the reason that this particular objection falls squarely within the rules laid down by this court in two recent cases. We held in *People ex rel. Ruchty* v. *Chicago, Milwaukee, St. Paul and Pacific Railroad Co.* 408 Ill. 480, that the existing authorized levy, which was an essential prerequisite to a referendum increase under the provisions of article 17 of the School Code, was to be determined after applying the formulas provided in section 162a of the Revenue Act (Ill. Rev. Stat. 1951, chap. 120, par. 643a,) for determining maximum levies during the period of transition to State-wide full value assessment. The

effect of the *Ruchty case* was to require the raise in school rates that might be authorized by elections to proceed by steps, that is from fifty cents, the basic rate, to seventy-five cents and from seventy-five cents to the next step by successive elections. Since no election appears to have been taken to raise the rate from fifty cents to seventy-five cents, under the *Ruchty case* the levy in excess of that which could be raised under the minimum rate was void and, of course, the one cent in addition to the seventy-five cents, if such had been legally authorized, was also void. Since no election was had to raise the rate from fifty cents to seventy-five cents or from seventy-five cents to the next higher bracket, anything in excess of the legal rate of 45.1 cents on the $100 was clearly illegal. Section 162a was fully quoted and effectively discussed by this court in the more recent consolidated cases of *People ex rel. Ross* v. *Chicago, Burlington and Quincy Railroad Co.* and *People ex rel. Ross* v. *Chicago, Milwaukee and St. Paul Railroad Co.* reported in 411 Ill. 60, with which cases the case at bar stands squarely on its facts. In those cases we held the rule announced in the *Ruchty case* was not affected by the 1947 amendments to section 162a of the Revenue Act and that a school district whose maximum rate under that section was less than .75 per cent did not have authority to increase its maximum rate above the .75 per cent by a single election. It is interesting to note that the election of April 10, 1948, in the case at bar, was held on the same day and year as that in the *Ross cases*. Thus, this court has settled the question of the applicability of the 1947 amendments to section 162a of the Revenue Act in this situation and the county court erred in overruling the objections.

The objection to the items concerning the levy for the building funds likewise raises an issue which it seems to us has been a long-settled principle in the law of school

taxation, despite some recent statutory changes. The pertinent facts as to this objection are, in short, these: On April 25, 1949, Benld High School District No. 184 adopted a resolution that $9609.61 in the building fund was not *presently* needed and transferred this sum to the educational fund of said district. On June 27, 1949, the said governing body certified a levy of $12,000 for building purposes and the county clerk extended a rate of 14.4 cents on each $100 of the assessed valuation of $5,116,724, which produced an amount of $7368.08. On July 1, 1949, the board met and accepted a bid in the sum of $7929 to lower and remodel the boys' and girls' toilet facilities. This project had been under consideration by the board since 1946 and was the only building project contemplated. On one occasion in 1947 a bid for the work in the neighborhood of $20,000 was considered too high and was rejected. The testimony of the secretary of the board indicates the work was being urged upon the board by the State visitor and the minutes of the meeting of the board on June 24, 1946, directed that the correspondence from the Federal government on remodeling the lavatories be forwarded to the engineer for correction. The fact, however, remains that nothing was done about the situation until July 1, 1949. But that the board had the project constantly in mind is attested by the levies for building purposes in recent years. The record is uncontroverted that the estimated two-year requirement for the building fund revised to the nearest round figure was $2700. Yet the board transferred from the building fund to the educational fund the following amounts in the years noted:

| Year | Amount Transferred | (Amount of Levy |
|------|-------------------|-----------------|
| 1949 | $9,609.61 | $12,000.00 |
| 1948 | 6,087.14 | 12,000.00 |
| 1947 | 4,000.00 | 7,000.00 |
| 1946 | 7,000.00 | 7,000.00) |

The balance on hand in the building fund on July 1, of each of the years as listed was as follows:

| | |
|---|---|
| 1949 | $    89.15 |
| 1948 | 6,533.29 |
| 1947 | 6,254.03 |
| 1946 | 9,253.78 |

Total receipts of the building fund were:

| | |
|---|---|
| 1949 | $10,886.53 |
| 1948 | 12,013.83 |
| 1947 | 9,854.03 |
| 1946 | 9,253.78 |

Objectors contend the $12,000 levy in 1949 for building purposes places an unnecessary burden on the taxpayers and enables the district to accumulate and retain an unusually large balance and surplus over and above actual requirements, contrary to law, or, in the alternative, conceding the improvements to be necessary, taken in conjunction with the transfer of funds to the educational fund, the result was to raise funds for educational purposes by a tax levy in excess of the maximum educational fund rate permitted by law, and the same constituted an unlawful diversion, said sum so transferred being greater than the amount produced. This, it is claimed, constituted an abuse of discretion by the board and amounts to, at least, a constructive fraud.

It would be well to mention here that the 1943 amendment to the School Code (Ill. Rev. Stat. 1949, chap. 122, par. 17-2,) gave permission to school boards to use unneeded building funds for education purposes (until 1953) but the reasons for this are obvious and based upon temporary conditions, hence the time limitation in the statute. Furthermore, the wording of the statute permitting the transfer, before the next levy, is that such funds "will not be needed for building purposes." It is interesting to note that previous resolutions of the Benld board contained the precise and unequivocal language of the statute but the

resolution of April 25, 1949, recited that the funds will not be *presently* needed. Yet on July 1, 1949, a contract was let for the only contemplated building fund expenditure, other than maintenance, bond interest and repairs. If the work was actually contemplated slightly more than two months previous to the contract letting, the resolution was not in good faith and the transfer should not have been made. And it can scarcely be contended under the facts here that the improvements were a new project. On the other hand, had the transfer not been made, no new levy for building purposes would have been necessary, for the balance on hand was sufficient to pay for the improvements in full. The course of conduct by the board, under the circumstances shown and admitted, would indicate a clever subterfuge and device to augment the educational fund, and constitutes a diversion of the building fund. This practice is not contemplated by any statute and has been condemned by this court. The two funds are separate and distinct and one cannot be used to augment the other by a levy which is excessive and unnecessary and far in excess of the needs of the district. It is not legal to supplement a shortage, if such exists, in one fund by an excessive and unnecessary levy for the other purpose. (See *People ex rel. Price* v. *Illinois Central Railroad Co.* 266 Ill. 636.) Where a balance is on hand amounting to a little less than two years' requirements as established by recent prior experience, a levy is unnecessary. (*People ex rel. Leaf* v. *Roth,* 389 Ill. 287.) Levies which result in an unnecessary accumulation of funds are invalid. *People ex rel. Toman* v. *Granada Apartment Hotel Corp.* 381 Ill. 41.

For the reasons assigned, the county court of Macoupin County also erred in overruling the objection to the building fund levy. The judgments of that court are therefore reversed and the causes remanded, with directions to sustain both of said objections in each case.

*Reversed and remanded, with directions.*