(No. 32671.—)

THE PEOPLE *ex rel.* Maurice Moore, County Collector, Appellee, *vs.* CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

*Opinion filed March 23, 1953.*

C. W. Krohl, and James I. Shields, both of Chicago, and Gumbart, Grigsby & Gumbart, of Macomb, for appellant.

Roger W. Hayes, State's Attorney, and Harris & Harris, both of Macomb, for appellee.

Mr. Justice Fulton delivered the opinion of the court:

Appellant, Chicago, Burlington & Quincy Railroad Company, appeals from an order of the county court of McDonough County overruling objections filed by appellant to certain taxes levied against its property in that county for the year 1949. The various items involved are presented here by a stipulated record which constitutes the entire record upon appeal.

The first objection concerns a tax levied by the county pursuant to the provisions of section 14 of "An Act in Relation to State Highways," approved June 24, 1921, as amended. (Ill. Rev. Stat. 1947, chap. 121, par. 304.) This statute authorizes counties to levy a tax "for the purpose of improving, maintaining, repairing, constructing and reconstructing the highways required to be improved, maintained, repaired, constructed and reconstructed by the county, as provided in sections 12 and 13 of this Act." Sections 12 and 13 relate to the control, maintenance and construction by the county of the State Aid Roads within the county. Under this act McDonough County made a levy of $40,000 for the year in question for which a rate

of .041 per cent was extended. This levy reads as follows: "For the purpose of improving and maintaining State Aid Roads including grading, graveling, draining, dragging, excavating, filling, opening, widening, etc, to be known as a County Highway Tax, as a special tax." The objection is that the entire levy is void because it is not sufficiently itemized; that it is for a lump sum and does not distinguish between a levy for construction and a levy for repair and maintenance; that parts of the levy are therefore illegal and since the illegal parts cannot be distinguished and separated from any legal items, the entire levy fails. The basis for appellant's objection is found in the use of the words "opening" and "widening" as used in the levy. Appellant says that these words necessarily mean "construction;" that by combining purposes of construction with purposes of improving and maintaining in an unitemized levy, the entire levy fails. Authority cited for this conclusion is the case of *People ex rel. Prindable* v. *New York Central Railroad Co.* 397 Ill. 247.

Counsel for both sides have cited a great number of cases dealing with the meaning of the words "opening" and "widening" as used in connection with highways, which we have found not to be particularly helpful here. A reading of the cases from this and other jurisdictions leads to the conclusion that neither of these words is a technical word with a fixed meaning as applied to roads. It appears that either may have as many meanings as the situations in which it is used. For example, the word "opening" may refer to the legal act of establishment; it may be used to mean laying out or dedicating or it may be limited in its meaning to the removal of obstructions in a road already constructed and having a legal existence. It may also refer to or include construction. Indeed, it may embrace the entire process of bringing a new road into existence, but this is not necessarily so. The meaning of the word can be determined only from an examination of the entire con-

text in which it appears. Cases dealing with the meaning of these words as used in a particular statute are of no help, for the problem here presented is to ascertain the meaning of the words as used in the particulary levy in question. In approaching this problem, we must reject at the outset appellant's contention that these words can mean or refer to construction only.

The purposes expressed in the levy are "improving and maintaining" the State Aid Roads of the county, including the various items thereafter listed, among them "opening" and "widening." Thus it appears that the entire levy is limited to the general purposes of improving and maintaining, and that the other items are limited in their application to activity consistent with the general purposes expressed. Under a proper interpretation of the levy, the word "opening" does not embrace construction but includes only those activities properly a part of a program of improvement and maintenance, such as the removal of obstructions from roads already constructed. The same is true of the word "widening." Since these words may have a meaning consistent with the general purposes expressed, and since the levy is phrased so as to circumscribe or limit them to those purposes, it cannot be said that these words mean construction and construction only.

The levy in the case of *People ex rel. Prindable* v. *New York Central Railroad Co.* 397 Ill. 247, relied upon by appellant, was clearly different from the levy now under consideration. That levy read: "For the purpose of improving, constructing, maintaining and repairing the highways required to be improved, constructed, maintained and repaired by the County as provided by Sections 12, 13 and 14 of 'An Act in Relation to State Highways,' approved June 21, 1921, as amended." We held that levy to be void because it stated more than one purpose and was not properly itemized under section 156 of the Revenue Act. (Ill. Rev. Stat. 1943, chap. 120, par. 637.) It will

be observed, however, that "constructing" was set forth in the same phrase and as a co-ordinate purpose with maintaining, improving and repairing. In the levy now in question the word "constructing" is not used at all, and the words "opening" and "widening" are made subordinate to the generally expressed purposes of improvement and maintenance. The levy was not subject to the objection interposed and the order of the county court overruling the objection was correct.

A further objection pertains to the levy for building purposes by Community Unit School District No. 180. Appellant contends that the levy exceeds the amount validly and legally appropriated and that the rate extended exceeds the maximum rate authorized by law. As an alternative objection it is contended that the assets of the district were understated because of a temporary loan from the building fund to the educational fund in the amount of $10,000 resulting in an excessive rate of .111 per cent. The scope of this alternative objection appears to have been broadened somewhat in argument to include the contention that funds were transferred from the building fund to the educational fund without proper resolution and that the conduct of the board of education in making the transfer constitutes constructive fraud.

It appears that the district levied an amount for which .25 per cent was extended for building purposes. This was done under the provisions of section 13 of article 8 of the School Code, (Ill. Rev. Stat. 1947, chap. 122, par. 8-13,) the pertinent provisions of which are: "The board of education shall have the same powers and duties as boards of education elected in accordance with Article 7 of this Act. The board of education may levy a tax annually upon all of the taxable property of the district not to exceed, except as provided in Sections 17-3, 17-4 and 17-5 of this Act, one (1) per cent for educational purposes and .25 per cent for building purposes and the purchase of school grounds,

upon full, fair cash value, as equalized or assessed by the Department of Revenue. Such rates may thereafter be increased or decreased in the same manner and within the limits provided by Article 17 of this Act." Objector contends that a rate of only .1875 per cent should have been extended pursuant to the provisions of section 2 of article 17 of the School Code. (Ill. Rev. Stat. 1947, chap. 122, par. 17-2.) Article 17 of the School Code deals with budgets, tax warrants and tax rates of school districts, generally, where the population of the district is less than 500,000. By section 17-2 a levy of not to exceed .50 per cent for educational purposes and .1875 per cent for building purposes is allowed, except as provided in sections 17-3, 17-4 and 17-5. These are the sections pertaining to increasing the tax rates for the various purposes after referendum and favorable action by the voters. Sections 9 through 14 of article 8 of the School Code deal particularly with the creation and establishment of community unit school districts and include the provisions found in section 8-13 for the levy of taxes for educational and building purposes in such districts. The law providing for community unit districts was added to the Code by the Sixty-Fifth General Assembly by act approved July 21, 1947. The provisions of the law concern the creation of a particular type of school district not theretofore in existence. By section 8-13 the legislature provided that such districts might levy not to exceed one per cent for educational purposes and .25 per cent for building purposes, except as provided in sections 8-9, 17-3, 17-4 and 17-5. Thus the provisions for increase in rates upon referendum for community unit districts are made the same as those applicable to school districts generally. The reference by the legislature in section 8-13 to sections 17-3, 17-4 and 17-5 demonstrates positively that the legislature was considering the provisions of article 17 at the time and deliberately chose to provide a greater rate for educational and

building purposes for community unit districts, while leaving the provisions for possible increase upon referendum the same as those applicable to school districts generally.

Appellant points out that section 17-2 was amended in 1947 and again in 1949 but that the rates specified therein remained the same. Appellant contends that since section 17-2 was amended after the adoption of section 8-13 in 1947 the rates provided for in section 17-2 apply to community unit districts. No plausible reason for the conclusion appears. The act pertaining to community unit districts deals with an entirely different subject matter from those sections of the law pertaining to school districts generally. It was perfectly reasonable that the legislature should provide a higher initial maximum rate for educational and building purposes in community unit districts. Agreeing with appellant's contention would lead to the result of giving no effect whatever to the clear provisions of section 8-13. It would also have the effect of repealing section 8-13 by implication. This is never favored. We do not regard the provisions of sections 8-13 and 17-2 to be repugnant, but even were they so it would be our duty so to construe them as to give effect to both, if possible. (*Bell* v. *School Dist.* 407 Ill. 406.) We hold, therefore, that the .25 per cent limitation provided for in section 8-13 applies to community unit districts. That rate was properly used in extending the taxes in question.

The facts stipulated in connection with the alternative objection show that a witness testified that on September 13, 1948, a resolution was adopted to transfer $14,000 from the building fund to the educational fund. On March 23, 1949, $10,000 was transferred. On August 29, 1949, the budget was adopted showing anticipated expenditures from the building fund of $30,293.96. Another resolution was adopted on the same date to transfer $10,000 from the building fund to the educational fund. No resolution is set forth in the record, but the stipulation in the record

reads: "It is stipulated between the attorneys that during the year July 1, 1949, to June 30, 1950, there was no transfer of any money from the building fund of the school district to the educational fund, but that on March 23, 1949, a transfer of $10,000 was made from the building fund of the district to the educational fund pursuant to previous action by the Board of Education authorizing the transfer of $14,000 from the building fund to the educational fund." Section 17-2 of the School Code provides, *inter alia,* that taxes levied for building purposes prior to and after the effective date of the act may, until July 1, 1953, be used for educational purposes in such amounts as the governing body of any school district may determine, if the governing body determines it is for the best interests of such district to do so and that such funds will not be needed for building purposes. The act further provides that such determination shall be made by resolution of the governing body prior to the adoption of its budget for any fiscal year.

Appellant concedes that under the authority of this statute transfers may be made from the building fund to the educational fund under proper circumstances when accomplished by proper action of the board. It is contended, however, that the record shows that no resolution in conformity with the statute was adopted and that the facts show that the action of the board in transferring the funds was constructively fraudulent or an abuse of discretion, citing as authority for the latter proposition the decision of this court in *People ex rel. Harding* v. *Chicago and North Western Railway Co.* 413 Ill. 93.

As to the contention that there was no proper resolution, the stipulated record does not contain the resolution and we are therefore unable to pass upon it. We are told only that there was a resolution and that a transfer was later made "pursuant to the previous action by the Board of Education authorizing the transfer of $14,000 from the

building fund to the educational fund." Since appellant challenges the legal sufficiency of the resolution it was incumbent upon appellant to see that it was included in the record and presented for review. The burden of proof is always on the objector to show the invalidity of the tax, the presumption always being that taxes have been legally levied. (*People ex rel. Franklin* v. *Wabash Railroad Co.* 387 Ill. 450.) In tax objection cases, as in other cases, the record must include the evidence necessary to review the error assigned. *People ex rel. Oller* v. *New York Central Railroad Co.* 388 Ill. 382.

Nor do we have sufficient evidence before us to decide whether or not the transfer of the funds constituted an abuse of discretion or was constructively fraudulent. In the case of *People ex rel. Harding* v. *Chicago & North Western Railway Co.* 413 Ill. 93, relied upon by appellant, we had before us facts showing that for four successive years the school board had transferred from the building fund to the educational fund a sum which was several times the amount of the normal two-year requirement for the building fund; that each year the board levied a large amount looking toward the construction of improvements which were contemplated but never undertaken. We observed that the resolution for transfer stating that the funds were not presently needed in the building fund, together with all the other facts, showed a clever subterfuge, especially in view of the fact that the contract for the improvements which had been contemplated for several·years was let within three months of the transfer reciting the building funds were not presently needed. No such facts appear in the record before us. We are not advised concerning fund balances or receipts. The mere fact that a budget exceeding $30,000 for building purposes was adopted in August following the transfer of $10,000 in March furnishes no basis for the conclusion objector would have us reach. The objections to the levy for building purposes

for Community Unit School District No. 180 were therefore properly overruled.

The final objection concerns the levy of Community Unit School District No. 185 for building bonds and interest. The facts stipulated show that Community Unit School District No. 185 was organized in 1948 and embraced all of the territory of former School District No. 160 as well as other lands. Building bonds had been issued by District No. 160 prior to its inclusion in District No. 185 and levy ordinances had been adopted and filed with the county clerk. For the year 1949 the county clerk extended taxes against all the property located in District No. 185 to meet requirements for the bonds and interest upon all bonds issued by District No. 160. The objection is that it was improper to extend taxes against all the property in District No. 185; that the taxes for this purpose should have been extended only against the property located in the territory formerly comprising District No. 160.

The levy for bonds and interest was made under the authority of section 32 of article 19 of the School Code (Ill. Rev. Stat. 1949, chap. 122, par. 19-32.) This statute, approved August 4, 1949, provides that upon the creation of a community unit school district the bonded indebtedness of all the underlying school districts lying wholly within such newly created district shall be assumed by the newly created school district and it shall be the duty of the county clerk annually to ascertain from the bond resolutions on file in his office the rate necessary to be extended to pay the principal and interest on all outstanding bonds of the underlying school districts lying wholly within the newly created school district and "to extend and collect said tax upon all the taxable property of such newly created school district for the purpose of paying such bonded indebtedness." It would therefore appear that the tax was properly extended under the precise authority of the statute, but ap-

pellant argues that to permit the extension would be giving section 19-32 a retroactive effect, since District No. 185 was created in 1948 and the statute was not passed until 1949. To support its position, appellant relies upon the decision of this court in *Spence* v. *Selcke,* 404 Ill. 98, decided in 1949, upon facts existing prior to the passage of the statute under which the taxes in question here were extended.

It is the general rule that where two or more municipal corporations are consolidated, or the entire territory of one municipal corporation is annexed to another, the contracts and indebtedness of the corporations which are consolidated or annexed become the contracts and indebtedness of the consolidated and annexing corporation, and the latter is vested with the power to raise revenue with which to pay them by levying taxes on the real and personal property of persons residing within the territory embraced in the consolidated or annexing corporation. In such case the resulting municipal corporation includes the persons and places of the several municipalities, and it has the same property and owes the same debts which they all had and owed. The identity of the component elements, in such cases, is lost and becomes absorbed into the newly created corporation. (*Kocsis* v. *Chicago Park Dist.* 362 Ill. 24.) As we pointed out in the case just cited, the rule operates unless the legislature otherwise provides. The legislature may, by legislation manifesting a contrary intention, prevent the operation of the general rule and principles set forth in the *Kocsis case.* (*Spence* v. *Selcke,* 404 Ill. 98.) We held in the *Spence case* that taxes to retire bonded indebtedness of an included district could not be spread over all the property of the new community unit district but must be extended only against the property located within the district or territory at the time of the making of the levy and the registration of the bonds. In that opinion we dis-

cussed the rule of the *Kocsis case* and acknowledged its general application, but found that, under the provisions of section 9 of article 19 of the School Code, (Ill. Rev. Stat. 1947, chap. 122, par. 19-9,) the legislature had specifically provided otherwise. The language of section 19-9, which we felt indicated a contrary intention, provides: "The County Clerk annually shall extend taxes against all the taxable property situated in the county and contained in the district as of the date of the registration of the bonds in amounts sufficient to pay maturing principal and interest, * * *." Section 19-9 relates to bonded indebtedness of school districts generally not governed by special law. At the time of the decision in the *Spence case* the legislature had not passed a statute dealing specifically with the question of assumption of bonded indebtedness of underlying districts by a community unit district, and section 19-9 served as the only guide for ascertaining the intention of the legislature in situations such as that presented here.

Since the enactment and approval of section 19-32, however, this court has apparently assumed, without deciding, that in situations such as that presented here, the taxes for bonded indebtedness would be extended against the property in the entire territory of the new community unit district. (*McLain* v. *Phelps,* 409 Ill. 393.) In the latter case we held that sections 19-32 and 19-33 were not unconstitutional in authorizing the assumption of debts of other districts which might be included in a new unit district. We observed that section 19-32 in particular was doubtless enacted to cover such situations as arose in the *Spence case,* and we said, at page 403: "Section 19-32 makes provision for the event that a community unit school district may embrace all of the territory of another school district which has an outstanding bond issue. That is the situation disclosed in this case, and School Districts Nos. 103 and 156, each of which are wholly within the territory of the Roxana District, have outstanding bond issues. Section 19-32 pro-

vides that if such a district, so embraced in a new school district, has outstanding bonds, the payment thereof shall be assumed by the newly created school district, and it shall be the duty of the county clerk to ascertain the rate necessary to pay the principal and interest of all outstanding bonded indebtedness from an examination of the bond resolutions on file in his office, and extend and collect taxes necessary for such purpose from all of the taxable property in the district which absorbs another one. Since section 19-32 requires the new school district to assume the payment of bonds of an underlying district lying wholly within it, it necessarily follows it becomes a part of the debt of the unit district, which must be reckoned in ascertaining the total bonded debt. It has been specifically held by this court that a statute authorizing a municipal corporation to assume the debts of another corporation with which it is consolidated or annexed does not violate any provision of the constitution. *Kocsis* v. *Chicago Park District,* 362 Ill. 24."

It is our conclusion, that since the enactment of section 19-32 dealing particularly with the assumption by community unit districts of the bonded indebtedness of former districts lying within them, the bar to the operation of the general rule announced in the *Kocsis case* has been removed, and that the county clerk properly extended the taxes in question against all of the property in District No. 185. If the general rule of the *Kocsis case* is applicable it would become operative at the moment when the new community unit district came into being, and the fact that section 19-32 was not passed until a later date would be immaterial.

For the reasons given, the judgment order of the county court of McDonough County overruling all of the objections interposed by appellant was correct and it is affirmed.

*Judgment affirmed.*