(No. 43083.—

THE PEOPLE *ex rel.* Myron Redfern, County Collector, Appellant, *vs.* PENN CENTRAL COMPANY *et al.,* Appellees.

*Opinion filed January 25, 1971.*

A. PAUL ROSCHE, JR., State's Attorney, of Hillsboro, (OTTO E. FUNK, of counsel,) for appellant.

COALE, TAYLOR, TIPSWORD & FRALEY, of Taylorville, (VANCE L. FRALEY, of counsel,) for appellee Penn Central Company.

POPE & DRIEMEYER, of East St. Louis, (JAMES R. PARHAM, of counsel,) for appellee Norfolk & Western Railway Company.

NAFZIGER & OTTEN, of Springfield, (W. KNOWLES LAIRD, of counsel,) for appellee Central Illinois Public Service Company.

Mr. JUSTICE WARD delivered the opinion of the court:

In an action brought by the county treasurer of Montgomery County, Myron Redfern, the circuit court sustained an objection by the defendants, Penn Central Company, Norfolk & Western Railway Company and Central Illinois Public Service Company (hereafter, the objectors) to the 1968 taxes levied by the Community Unit School District No. 3 of Montgomery County. Judgment in favor of the objectors was entered in the amounts the court found the

taxes paid under protest by them had been excessive. As a question concerning revenue is involved, the plaintiff has appealed directly to this court. Ill. Rev. Stat. 1969, ch. 110A, par. 302(a).

The objectors' ground for objection appears to be that the 1968 levy was excessive because sometime prior to July 1, 1968, the commencement of the fiscal year, $28,750.61 had been transferred by the Community Unit School District No. 3 of Montgomery County (hereafter, the District) from its educational fund to its Illinois municipal retirement fund. This amount was repaid to the educational fund from the Illinois municipal retirement fund on November 10, 1969, but, this was, of course, after the budget for 1968 had been adopted, after the levy for 1968 had been made and after the payment under protest by the objectors of their taxes. The objectors' claim is that so much of the funds sought by the District for educational purposes as were necessary to replace the amounts transferred to the Illinois municipal fund represented an excessive levy. The amount transferred, it is argued, should properly have been used only for educational purposes, and if it had been properly used or repaid before the 1968 levy it would have reduced the amount that was levied for the educational fund in 1968 by $28,750.61.

The plaintiff argues that the objectors did not establish a transfer of funds by competent evidence because there was no showing that the financial reports of the District, which were introduced and reflected this transfer, were official reports or that they were made by a public official in the course of a duty imposed by law. However, the parties entered into a stipulation in the circuit court that this transfer of funds had been made. Under these circumstances it is not necessary to consider the plaintiff's contention that a transfer was not proved.

Before examining the other contentions of the plaintiff it will be helpful to consider the circumstances of the so-

called transfer of funds as reflected in reports of the District which were introduced into evidence by both parties. These reports are the audit reports of June 30, 1967, June 30, 1968, and June 30, 1969, and the annual financial reports for the years 1967-1968 and 1968-1969. The audit report for June 30, 1967, called the District's attention to the Illinois School Code's limitation of interfund loans between the educational and building funds, which are allowed by statute, and to the statutory requirement that these must be repaid within one year. The report also stated: "You will note * * * that a great part of the interfund loans have come into existence, over several years, including the current year due to taxes not having been allocated to the proper funds for which the same were levied. This condition has existed in each of the past four fiscal years, beginning with the 1963-64 school year. During the current year corrections were made as to prior years in the Educational, Building and Bond and Interest Fund but not in the Transportation and Municipal Retirement Funds."

It appears that the transfer, or loan, as the parties regard it, to the municipal retirement fund occurred because of the failure of the District to allocate properly funds received by the District to its various funds or accounts. As a result of this improper tax allocation on June 30, 1967, the concerned $28,750.61 was treated as, and appeared for auditing purposes as, a loan from the educational fund to the Illinois municipal retirement fund. The audit report of June 30, 1968, shows that an attempt to repay this loan was made during the fiscal year but that due to an accounting error $28,750.61, which apparently had been transferred to the educational fund, had been immediately retransferred to the Illinois municipal retirement fund. Thus, this sum again appeared as a loan from the educational fund to the Illinois municipal retirement fund on June 30, 1968. The June 30, 1969, audit report indicates that for some reason this error was not corrected during the following

year and as of June 30, 1969, it continued to be shown as a loan to the Illinois municipal retirement fund.

The testimony of the superintendent of the District indicates that the repayment to the educational fund was made on November 10, 1969, within two days after the auditor had informed the superintendent that the loan had to be repaid. All of the reports introduced show that the amount transferred was always shown as an asset of the educational fund and a liability of the municipal retirement fund.

The plaintiff says that the trial court erred in holding that the transfer of funds was improper because it was not repaid within a year as required by section 10—22.33 of the School Code. The plaintiff's position is correct because, at the time of the transfer, section 10—22.33 extended only to transfers from the educational fund to the building fund and from the building to the educational fund and was not applicable to this "transfer." The statute simply did not provide for loans from the educational fund to the municipal retirement fund. (See Ill. Rev. Stat. 1969, ch. 122, par. 10—22.33.) The plaintiff further argues that since section 10—22.33 of the School Code did not govern this transfer of funds, as the objectors now acknowledge, the decision of the trial court cannot be sustained unless it can be said that there was an unlawful diversion of monies from one fund to another. The plaintiff says that under *Gates* v. *Sweitzer*, 347 Ill. 353, the temporary borrowing of money from one fund by another does not constitute an unlawful diversion of money. In *Gates* this court said: "Municipal officers have no right to divert moneys from one fund to another and different fund for which it was not appropriated. But the word 'divert' is used in the sense of turning such fund permanently from its purpose or the final appropriation of it to some other use. If, as counsel for appellees argue, the commissioners had a right to, and did, temporarily borrow sufficient idle bond funds or other funds for the benefit of a fund having a stated and sufficient in-

come to re-pay the sum borrowed, as the bond fund had, and with the intention that it shall be so re-paid, such is not a diversion of funds, for the fund from which the money is taken holds the credit against bond interest and principal fund and is not depleted." 347 Ill. 353, at 359.

The plaintiff's argument from this is that since the monies were clearly shown by the District's financial reports as a loan from the educational fund to the Illinois municipal retirement fund which the objectors admit, and since there was no evidence of constructive fraud or abuse of discretion, the transaction amounted merely to a lawful borrowing or transfer of idle funds. Under these circumstances, the plaintiff says, the tax levy was proper and not excessive.

However, we cannot regard the transfer of the funds from the educational fund to the Illinois municipal retirement fund as proper. In *People ex rel. Brenza* v. *Gilbert,* 409 Ill. 29, which involved a temporary transfer of funds from a working cash fund for corporate purposes to the county highway fund, the court considered whether there was authority to loan monies temporarily from funds in a situation resembling the one here. This court stated: "While there is no direct prohibition [in the statute], it is clear that the working cash fund for corporate purposes was not intended to be used for the purpose of advancing funds to the county highway fund. * * * the appellee cites a number of cases in which we have held that money from one fund may be temporarily loaned to another fund, without amounting to a diversion of corporate funds, and notable among this list of cases are: *Gates* v. *Sweitzer,* 347 Ill. 353; *People ex rel. McDonough* v. *New York Central Railroad Co.,* 355 Ill. 80; *People ex rel. McDonough* v. *Atchison, Topeka and Santa Fe Railway Co.,* 356 Ill. 251; *People ex rel. Toman* v. *Central Plaza Hotel Corp.,* 375 Ill. 114; *Town of Thornton* v. *Winterhoff,* 406 Ill. 113. * * * In all of those cases there was no express authority to make the

temporary loan, but it was regarded as enforcible as the exercise of sound business discretion upon the part of the municipal authorities, * * * The present case is different from those last cited in that there is at least an implied prohibition against using the working cash fund for anything except the purpose of financing the corporate fund of the county. We believe that this policy has been recognized by the General Assembly by the passage in 1947 of a special statute, authorizing the creation of a working cash fund for the county highway fund. (Ill. Rev. Stat. 1947, chap. 34, pars. 110f1 to 110f5 incl.)"

Here, we also believe that the fact that section 10.22.33 does not authorize loans between the educational fund and the Illinois municipal retirement fund must be considered to have impliedly prohibited such transfers. However, we do not judge that this absence of authority to transfer, standing by itself, was sufficient to support the defendant's objections to the tax levy. Again as we stated in *Gilbert:* "The objection to a levy should disclose that the taxpayer has been injured by what the authorities have done. In the present case the maxim of *damnum absque injuria* could appropriately apply, * * *." See also *People ex rel. Kucharski* v. *McGovern,* 42 Ill.2d 119, 124.

The burden was on the objectors to show the invalidity of the tax levy since the presumption is always that the taxes have been legally levied. (*People ex rel. Moore* v. *Chicago, Burlington & Quincy Railroad Co.,* 414 Ill. 419, 427; *People ex rel. Franklin* v. *Wabash Railroad Co.,* 387 Ill. 450, 457.) Here, the record does not reveal sufficient evidence to support the objectors' claim that the levy for educational purposes was excessive and injurious to them. (*Cf. People ex rel. Oller* v. *New York Central Railroad Co.,* 388 Ill. 382.) They contend that the levy for educational purposes in 1968 was excessive simply because a budget providing for approximately $940,000 for educational purpose was adopted at a time when there was a loan of $28,750.61

outstanding to the Illinois municipal retirement fund. We do not regard this as a sufficient basis for concluding that the levy was excessive as was alleged in the objections. (*Cf. People ex rel. Moore* v. *Chicago, Burlington & Quincy Railroad Co.,* 414 Ill. 419, 427.) Further, the budget was not introduced into evidence nor was there other evidence showing whether the fact of the outstanding loan was considered in determining what amount was necessary for the needs of the District's educational fund. The objectors admit that this loan did appear as an account receivable in the budget and it may have been considered in the drafting of the budget as an expected source of funds to meet anticipated educational expenses. (*Cf. People ex rel. Kucharski* v. *McGovern,* 42 Ill.2d 119, 124.) In fine, there was insufficient evidence offered by the defendants to show that the $940,000 levy was excessive.

The decisions cited by the defendants are distinguishable from this case. In *People ex rel. Harding* v. *Chicago and North Western Railway Co.,* 413 Ill. 93, a school board had transferred sums from its building fund to its educational fund for four successive years and each year the board also levied a large amount for the construction of improvements which were never undertaken. We observed that the resolution for transfer of funds in the year concerned stated that the funds to be transferred were not "presently" needed in the building fund. Yet within three months a building contract was let for improvements which had been contemplated for several years. This court said: "If the work was actually contemplated slightly more than two months previous to the contract letting, the resolution was not in good faith and the transfer should not have been made. And it can scarcely be contended under the facts here that the improvements were a new project. On the other hand, had the transfer not been made, no new levy for building purposes would have been necessary, for the balance on hand was sufficient to pay for the improvements in full. The course of

conduct by the board, under the circumstances shown and admitted, would indicate a clever subterfuge and device to augment the educational fund, and constitutes a diversion of the building fund." (413 Ill. 93, 99.) There is no suggestion here of such an improper fiscal device. *Cf. People ex rel. Moore* v. *Chicago, Burlington & Quincy Railroad Co.,* 414 Ill. 419, 427.

In *People ex rel. Meyers* v. *Chicago & North Western Railway,* 1 Ill.2d 255, the court found an inconsistent pattern of conduct on the part of the school board. There each board involved had formally declared by resolution that its building fund resources were in excess of its needs for building purposes and then, at about the same time, officially declared, in a levy resolution and in formal certificates of levy, that it did require a designated amount for building purposes. Here there was no such pattern of conduct. This so-called transfer had been created because of an improper allocation of taxes and had not been repaid to the educational fund, it appears, simply because of an accounting error.

For reasons given, the judgment of the circuit court of Montgomery County is reversed, and the cause is remanded with directions to overrule the objection of the appellees.

*Reversed and remanded, with directions.*